### In re DOWNING PAPER CO.

#### (District Court, E. D. Pennsylvania.   July 8, 1905.)

#### No. 1,948.

SALES—TRANSFER OF TITLE—PROPERTY BOUGHT ON APPROVAL.

Where an engine, sold to a corporation subject to approval after 60 days' trial, was retained and used until the bankruptcy of the corporation nearly a year later, during which time no dissatisfaction was expressed, and the seller sent a number of statements for the price, the sale became absolute, and the engine passed to the trustee in bankruptcy as property of the estate.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 409–417, 557.]

In Bankruptcy.   On certificate of referee.

The following is the opinion and order of the referee upon the claim of the Dillon Machine Company:

The Dillon Machine Company has filed its petition, alleging that, at the time of the bankruptcy, the bankrupt had in its possession a certain machine, known as a "No. 1 Jordan Engine," which was delivered to the bankrupt upon trial only, and never was accepted by the bankrupt, and that the title to the same is in the petitioner. The receiver (now the trustee), answering the petition, avers that said engine is not the property of the Dillon Machine Company, but belongs absolutely to the Downing Paper Company, and was its property at the time the petition in bankruptcy was filed. The petition in bankruptcy against said company was filed on May 17, 1904, and the adjudication was entered June 10, 1904.

In support of the petition, M. B. Bacon, salesman of the Dillon Machine Company, testifies that in 1903 he called upon the Downing Paper Company, and "they said they would take one of our engines on trial. I told them I was satisfied it would do the work they required, and they said if it did they would order another one; but they had to try it first. Q. Did they mention the terms? A. They said they would not pay for it unless it was satisfactory. They had to try it first in order to test it, whether it was or not. * * * Q. Was the price mentioned? A. Yes, sir; it was to go in along with another engine of another make. That was to be on trial too. * * * Mr. Stelwagon said * * * the engine, if they got it from us, would be put alongside another engine, and the one that proved the most satisfactory they would order another one like it and throw out the one that did not come up to the requirements. * * * Q. When were they to pay, if it proved satisfactory? A. That was to be arranged with Mr. Dillon. Q. You did not arrange that? A. No. Q. Was there any time fixed during which they were to try it for? A. They said the other people would allow them to try it for two months. I told them if it was a reliable maker we would allow them just as long as the other people did."

After this interview of Bacon with the Downing Paper Company, the following letters were written:

"The Downing Paper Co.

"West Philadelphia, Pa., May 29th, '03.

"Dillon Machine Company, Lawrence, Mass.—Dear Sirs: Your Mr. N. B. Bacon called upon us this morning, and has persuaded us to put in on sixty days trial your No. 1 Jordan engine which he guaranties will do our work, for the sum, if approved, of $500.00, delivered in Philadelphia. We expect to place alongside of this Jordan one of another make, and the one giving us the best satisfaction will be retained and the second one ordered, when we are convinced of the engine best adapted to our purposes, and of course the one which does not give us satisfaction will be returned; as both makers agree

to put their Jordan in on trial and allow us to be the judge of their merits. We would like to have a blue print and all necessary information, in order that it may be set up properly, and that the best results be obtained. We would also like a special price for refilling your engine, as it is likely that with our stock it will have to be refilled every three or four months. If you have furnished engines to parties in the same line of business as ours, you are undoubtedly aware of the difficulties with which we have to contend, as we get a good deal of foreign substance with our stock. We shall, of course, take all possible precautions to keep metal and wood out of the engine, and we hope not to be troubled very greatly in this respect; but we want you to know that our stock is the hardest kind of stock the Jordan can be used on.

"Kindly advise us how quickly you can forward us an engine, and oblige,
"Respectfully. The Downing Paper Co.,
"W. C. Downing, President."

"Dillon Machine Co.

"Lawrence, Mass., June 1, 1903.

"The Downing Paper Co., West Philadelphia, Pa.—Gentlemen: We are in receipt of your order of the 29th ult., for one of our No. 1 Jordan engines on sixty days' trial. We will accept your order. We have inclosed you a print of the machine referred to. In regard to the filling for these machines, our regular price is $85.00 f. o. b. Lawrence, Mass.. but we will make the price $80.00, freight allowed. This filling costs a little more than the ordinary filling, as there is more of it. The bars are $2\frac{3}{4}''$ by $3\frac{3}{16}''$ in the plug and $1\frac{3}{4}''$ by $\frac{3}{16}''$ in the shell. These Jordans have a .15'' end thrust which gives longer wear than the ordinary Jordan. We will probably ship the Jordan the latter part of this week.

"Yours truly, Dillon Machine Co.
"Dic. by I. P. Dillon, Pres."

The engine was shipped on June 9, 1903, and in due time received by the bankrupt and set up and used by it to the time of the bankruptcy. Entry of the transaction was made in the order book of the Dillon Machine Company as follows:

| Date. | No. | By whom ordered. | | Description. | Price. | Terms. |
|---|---|---|---|---|---|---|
| 5/29/03 | 1511 | The Downing Paper Co. Philadelphia, Pa. | 1 | #1 Jordan Engine | $500.00 if approved. | 60 days' trial. |

The bookkeeper of the Dillon Machine Company testifies that in addition to above entry the transaction is shown on their books, as follows: "Q. Have you ever sent them a bill? A. A bill was sent with the shipping receipt. Q. Was the engine charged up on the daybook? A. Charged up on the journal. Q. By you? A. Yes. It was put originally on the order book. Q. My question was, 'was this engine charged against the Downing Paper Company on any book,' and you answered 'on the journal?' A. It was entered on the journal. Q. You have not that with you? A. No, sir. Q. Do you know what it says? A. Downing Paper Company, No. 1 Jordan Engine, $500.00 Q. And you sent them a bill with the shipment? A. Yes, sir. * * * Q. Does this appear on your ledger? A. Yes, sir. Q. You have not the ledger with you? A. No. Q. Did you enter it on the ledger? A. I did. Q. What does the ledger say? A. Merely the date of the invoice and the amount. That is all that is on the ledger, and the initial of the book it was taken from. Q. A charge against the Downing Paper Company as of June 9, 1903, of $500.00? A. It appears so on the ledger."

The bookkeeper of the Dillon Machine Company further testifies that there was no correspondence between the parties, except the two letters above mentioned; but that there were some statements sent, as to which he says: "Q. Never requested payment? A. There were some statements sent. Q. When? A. I sent statements once or twice, I believe. Q. When? A. I could not tell you the dates. Q. What did those statements say? A. After they had had the machine about six months, I sent them a statement. Q. What did it say? A. There was nothing on the statement, except the date and the amount of the indebtedness, that was all. Q. The statement showed

that your company wanted them to pay $500.00. did it not? It was a paper reading something like this, Downing Paper Company, Dr., to your company, Jordan engine, June 9, 1903, $550.00? A. There was nothing said about a Jordan engine. Q. Well, merchandise, $550.00? A. $500.00. Q. How many statements did you send? A. I think I sent two or three. Q. All alike? A. Yes, sir. Q. Are any copies of your statements in your order book? A. No, we don't copy statements. Q. Did you get any answers to those statements? A. No. Q. Did you ever draw on them? A. No."

The bankrupt company did not take any evidence. It is not shown that the bankrupt company did put in another engine and test it in competition with the engine of the petitioners. The Dillon Machine Company allowed the engine to remain in the possession of the bankrupt from the time of shipment early in June, 1903, for about six months without inquiring whether the engine was approved, without agreement extending the time fixed in the contract, namely, 60 days on trial, and without inquiry as to the result of the test of the engine in competition with another engine, if such competition was had, and at the end of six months sent several statements to the bankrupt company claiming the price of the engine. The bankrupt company did not at any time express dissatisfaction with the engine or offer to return it, but retained it and used it, and by its acts asserted absolute ownership of it. Where there is a sale upon trial, with a time fixed by the parties, a failure to return the goods, or give notice in accordance with the agreement, makes the sale absolute. Butler v. School District, 149 Pa. 355, 24 Atl. 308, and cases cited.

Applying the law to the facts of this case, the sale of the engine must be held to be absolute, and the title to it is vested in the trustee. The Dillon Machine Company was allowed by the court to take said engine upon giving bond in the penal sum of $1,000 conditioned to abide by all the lawful orders of the court relating to said engine and the interests of the estate and its creditors therein.

It is ordered that the said Dillon Machine Company pay to the trustee the value of said No. 1 Jordan engine at the time the said engine was delivered to the Dillon Machine Company by order of the court.

Harry S. Hopper, for Dillon Mach. Co.
J. Siegmund Levin, for trustee.

HOLLAND, District Judge. For the reasons set forth in the report of the referee, the order recommended by him is approved. This order is as follows:

"It is ordered that the said Dillon Machine Company pay to the trustee the value of said No. 1 Jordan engine at the time the said engine was delivered to the Dillon Machine Company by order of court."

And it is so ordered.