THEODORE HAMM BREWING COMPANY, Appellee, v. JULIUS
FLAGSTAD et al., Appellees; FARMERS & MERCHANTS NA-
TIONAL BANK, Appellant.

GARNISHMENT: Claims by Third Parties—Priority Controlled by
1    Rights of Defendant in Garnishment. The right of a garnish-
ing creditor to a fund in the hands of the garnishee cannot be
superior to the right of the principal defendant in garnish-
ment to such fund. So held in a contest between a plaintiff in
garnishment and an intervening mortgagee, wherein the latter
claimed the funds as the proceeds of a sale of the mortgaged
chattels.

PRINCIPLE APPLIED:    See No. 6.

CHATTEL MORTGAGES: Requisites and Validity—Description—
2    Sufficiency. The description of cattle covered by a chattel
mortgage, as in the possession of the mortgagor in a named
township, county, and state, on specified governmental subdi-
visions of land, with the names of the persons from whom pur-
chased, and with a designation, in part, of the sex of said ani-
mals, is amply sufficient, as between the mortgagor and mort-
gagee, especially when the cattle in controversy had been
mutually selected and separated by said parties from the bal-
ance of the herd.

TRUSTS: Constructive Trusts—Proceeds of Mortgaged Chattels—
3    Garnishing Creditor—Priority of Right. Equity will, in favor
of a chattel mortgagee, and against a chattel mortgagor, or any
other *disinterested* receiver,—such, for instance, as a garnishee,
—impress a trust upon the proceeds of a sale of the mortgaged
property; and especially when such sale was not made by the
mortgagor in the manner authorized by the mortgagee.

PRINCIPLE APPLIED:    See No. 6.

ACTIONS: Nature and Form—Equitable Relief in Actions at Law—
4    Garnishment—Impressing Trust. That a proceeding is at *law* is
not necessarily an insurmountable obstacle to the application
of equitable principles. So held where a trust was, in a garnish-
ment proceeding, impressed upon the proceeds of a sale of
mortgaged chattels.

PRINCIPLE APPLIED:    See No. 6.

EQUITY: Principles and Maxims—That Done Which Ought to be

Done.  Principle recognized that equity regards that done which ought to have been done.

PRINCIPLE APPLIED:   See No. 6.

CHATTEL MORTGAGES:   Lien and Priority—Commingling Mortgaged and Non-Mortgaged Property—Commingled Proceeds—Effect.   The commingling of mortgaged and non-mortgaged chattels and the sale of the property *en masse*, with consequent commingling of the proceeds, will not (no superior right in third parties intervening) destroy the mortgagee's right to the proceeds representing the property covered by his mortgage. Where one wrongfully commingles trust property with his own, the trust will be impressed upon the whole *as against him*.

PRINCIPLE APPLIED:   A mortgagor and mortgagee mutually selected 41 head of cattle out of the herd covered by the mortgage, and agreed that they should be sold, and that the mortgagor should ship the same, in the name of the *mortgagee*, to a named commission firm.   The mortgagor had, at the same time, 24 other and different cattle in which a third party was interested, to an amount, apparently, of $1,000.   The mortgagor commingled the 41 head of mortgaged cattle with the 24 head of non-mortgaged cattle, and shipped the entire 65 head in that condition, and in his own name, but without fraudulent intent.   The cattle were sold *en masse*.   The third party, interested in the 24 head, caused a sight draft, in his favor, for $1,000 to accompany the shipment, and this was paid out of the proceeds.   Later, the commission firm was garnished on an attachment sworn out by a creditor of the morgagor, and the contest over the right to said remaining proceeds was *solely* between the attaching creditor and the mortgagee.
*Held*:
(1) The garnishing creditor had no greater right to said proceeds than the mortgagor had.
(2) The proceedings' being at law did not prevent the application of equitable principles.
(3) Equity would impress a trust upon said proceeds in favor of the mortgagee, and such trust was enforcible in the garnishment proceedings.
(4) It would be presumed that said proceeds represented the proceeds of the 41 head of cattle.

TRUSTS:   Establishment and Enforcement—Following Trust Property or Proceeds—Identification.   Trust funds do not lose their character as such, so long as they can be identified directly, or *by fair implication*.

PRINCIPLE APPLIED:   See No. 6.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FEBRUARY 8, 1918.

THE plaintiff is an attachment creditor of the defendant Flagstad. It served its attachment by garnishment of Steele-Siman Company, a supposed debtor of Flagstad's. The Farmers & Merchants National Bank of Webster intervened in the garnishment proceeding, claiming to be the owner of the funds in the hands of the garnishee. Judgment went by default against the attachment debtor. The issues were tried as between the intervener and the attaching creditor. The trial court dismissed the petition of intervention, and the intervener has appealed.—*Reversed.*

*Rex W. Harris* and *Shull, Gill, Sammis & Stilwill,* for appellant.

*Norbert Willwerscheid* and *Henderson, Fribourg & Hatfield,* for appellee.

EVANS, J.—The garnishee is a live stock commission agent, engaged in business at the stockyards of Sioux City. The funds in its hands are the proceeds of a shipment of stock consigned to it for sale for Flagstad. Flagstad is a farmer, and a resident of South Dakota. The intervener is a bank, engaged in business at Webster, in the same state. The record discloses no dispute in the evidence upon any material fact. Flagstad is a man of no means. The fair inference from the evidence is that he is insolvent. Some time prior to October 23, 1916, the plaintiff had obtained a judgment against him in South Dakota. At about the time of the shipment of the cattle in question, the plaintiff brought an action in Woodbury County upon such foreign judgment, and sued out a writ of attachment and served the same by garnishment, as already indicated. The intervener's claim to the proceeds of the cattle thus sought to be

reached by plaintiff's attachment is predicated upon a chattel mortgage upon the cattle thus shipped. The substance of the story leading up to the mortgage and to the subsequent shipment of the cattle is that, in the spring of 1916, Flagstad conceived the idea of renting a tract of land from the Indian Agency, and of buying a considerable number of cattle to be pastured thereon during the season of 1916. He entered into an arrangement with the intervener, whereby he was permitted to issue checks upon the bank for the purchase price of such cattle as he might choose to buy, and whereby he should give his note for the sum total of his checks, to be secured by a mortgage upon all the cattle thus bought by him. Such note and mortgage were also to include the sum of $200, being the amount loaned to him to pay the rental for the rented pasture. Under this arrangement, Flagstad purchased 84 head of cattle, and received the same into his possession and kept the same in such pasture. He also executed his note to the bank, secured by a mortgage on all said cattle, for the sum total of $2,639, being the exact amount of the cost of the cattle, plus $200 pasture rent. The shipment of the cattle was made on October 23d. A few days before that time, Cooper, the bank official with whom Flagstad's arrangement was made, went with Flagstad to the pasture wherein the cattle were kept, and selected 41 for the purpose of shipment. It was agreed between them that they should be shipped to Steele-Simau & Co., in the name of Cooper. Ten days later, they were shipped from the station of Waubay; but they were so shipped in the name of Flagstad, and not Cooper. The shipment in the name of Flagstad was done without the knowledge or consent of the bank, and without any actual fraudulent intent on the part of Flagstad. Some complication enters into the story at this point. Shortly prior to this date, Flagstad had bought from farmers in the vicinity of Waubay 24 head of cattle, for the purpose of immediate shipment. He had paid for these with checks on La Salle,

a banker at Waubay, under an arrangement with La Salle. These 24 head of cattle were delivered to him at Waubay, at the same time that he was shipping the 41 head for Cooper. The two bunches of cattle, making a total of 65 head, were commingled, and shipped in two carload lots. Upon the advice of La Salle, Flagstad shipped them in his own name, because he could thereby obtain return transportation without charge. A sight draft for $1,000, in favor of La Salle, and drawn on the commission merchants, was attached to the bill of lading. Flagstad attempted to separate the two lots at the yards in Sioux City, but was advised by the commission merchants that they were already bunched according to quality, and that some of them were already sold. The result was that the proceeds of the two lots were commingled in the hands of the commission merchants. Out of these proceeds, La Salle's sight draft was paid. So far as appears herein, this was the full extent of his interest in the shipment. A balance of $1,201.67 remained in the hands of the commission merchants, at the time of the service of the garnishment upon them. The intervener claims these proceeds as being the proceeds of its 41 head of cattle, which should have been shipped in its name. The claim of the intervener was resisted by the plaintiff upon three principal grounds: (1) That the intervener's mortgage was defective in description, and that it was, therefore, invalid and void, at least as to innocent third parties; (2) that, at most, the lien of the intervener could attach to the mortgaged property only, and not to the proceeds of the sale thereof; (3) that the mortgaged property and the proceeds thereof had become so commingled with other property and the proceeds thereof that the identity of the proceeds of the intervener's cattle has been lost, and that it cannot say that the moneys in the hands of the garnishee are the proceeds of its 41 cattle.

In order to dismiss the intervener's petition, the trial

court must have sustained at least one of these grounds of
attack.

I.    It is to be noted first, that no ques-

1. GARNISHMENT:
claims by
third parties:
priority con-
trolled by
rights of de-
fendant in
garnishment.

tion of innocent third parties is involved.
The plaintiff is not only an attaching cred-
itor, but a garnishing · creditor.  In either
character, its rights arise no higher than
the rights of Flagstad.  Whatever the rights
of the bank are, as against Flagstad, it may maintain them
as against the attachment and as against the garnishment, re-
gardless of any question of notice, actual or constructive, to ·
the attaching and garnishing creditor.  For the purpose,
therefore, of simplifying the discussion, we may eliminate
the plaintiff from the discussion, and confine our inquiry to ·
the question of right, as between the intervener and Flag-
stad.

The description in the intervener's mortgage was as
follows:

"* * *, the following described property, now in
my possession in the town, county and state aforesaid, and
free from all incumbrances, to wit:  Eighty-four (84) cattle,
located on the northwest quarter of the southeast quarter,
Section 9, Township 123, Range 53, and south one half of
southwest quarter Section 9, and south one half of north-
west quarter Section 16, and south one half of northeast
quarter Section 17, and northwest quarter of southeast
quarter Section 17, in Township 123 North, Range 53, and
west one half of northwest quarter of northwest quarter
Section 22, Township 123 North, Range 53, and bought of
the following parties:  Waddel's auction, 3 steers and 1
cow.   S. T. Lasell, 7 cattle.   Frank Rumpoa, 3 steers.
Frank Block, 8 steers.   Albert Morris, 1 steer.   Anton
Block, 1 steer.   Carl Sten, 9 cattle.   Frank Rumpoa, 1 steer.
S. T. Lasell, 1 cow.   F. F. Block, 2 steers.   Ed Burns, 2
steers.   August Golombiewski, 1 cow and 1 steer.   Jacob
Rumpoa, 1 cow.   August Skroi, 1 cow and 2 steers.   Anna

Moitks, 6 cattle. W. J. Johnson, 5 steers. John Nelson, 3 steers. Lars Erickson, 3 steers. Jacob Pionk, 6 cattle. Ed Erickson, 3 steers. Frank Figurski, 2 cattle. Tillie Block, 2 cows. T. P. Snaza, 2 steers. Frank Kurkowski, 1 cow. Bernard Henning, 5 steers. Frank Block, 1 steer."

2. CHATTEL MORTGAGES: requisites and validity: description: sufficiency.

Regardless of the question of the sufficiency of the description for the purpose of constructive notice to third parties, we are clear that the description is sufficient as between the parties to the mortgage. Our previous holdings leave little room for debate upon that question. *Wells v. Wilcox,* 68 Iowa 708; *Yant v. Harvey,* 55 Iowa 421; *McGarry & Brown v. McDonnell,* 82 Iowa 732; *Frick v. Fritz,* 115 Iowa 438.

The description was also sufficient under the law of South Dakota, where the mortgage was made. *Advance Thresher Co. v. Schmidt,* 9 S. D. 489 (70 N. W. 646) ; *First Nat. Bank of Redfield v. Koechel,* 8 S. D. 391 (66 N. W. 933) ; *Coughran v. Sundback,* 9 S. D. 483 (70 N. W. 644) ; *Crow v. Zollars,* 11 S. D. 203 (76 N. W. 924) ; *Reynolds v. Strong,* 10 N. D. 81 (85 N. W. 987).

The subsequent mutual selection of the 41 head by the parties to the mortgage was itself an identification of the mortgaged property as between them. We must hold, therefore, that, as between the parties thereto, the mortgage was valid.

3. TRUSTS: constructive trusts: proceeds of mortgaged chattels: garnishing creditor: priority of right.

II. As between it and Flagstad, was the intervener entitled to claim from the commission merchants the proceeds of the sale of the mortgaged property? That equity will impress a trust upon the proceeds, in such a case, as against the mortgagor, and as against a disinterested despositary, is beyond question. *Barnes v. Thuet Bros.,* 116 Iowa 359, *Hoyt v. Clemans,*

167 Iowa 330. We are not unmindful, how-

4. ACTIONS: nature and form: equitable relief in actions at law: garnishment: impressing trust.

ever, that this suit is pending upon the law side of the court. The question naturally arises whether we are thereby precluded from applying equitable principles to the controversy. The real question that con·

cerns the plaintiff, as a garnishing creditor, is whether the garnishee is indebted to Flagstad. If the intervener has shown that it, itself, has a right of action for the funds in the garnishee's hands, either at law or in equity, it is suf-ficient to protect the garnishee against liability to the plain-tiff as a garnisher. We think, therefore, that it is not ma-terial to the determination of the intervener's rights whether the garnishment proceeding be heard at law or in equity. Ordinarily, if not necessarily, a garnishment pro ceeding belongs to the law side of the court. It does not follow that the equitable rights of third parties may be ignored, in determining the liability of a garnishee in such

5. EQUITY: principles and maxims: that done which ought to be done.

proceeding. When it is further considered herein that the very agreement between Cooper and Flagstad whereby Cooper con-. sented to the shipment of the cattle was that they were to be shipped in his name to these

particular commission merchants, it carries the question still further beyond the bounds of debate. It was the duty of Flagstad to have shipped the cattle in the name of Cooper. So far as his rights are concerned, he will be deemed to have done so. His right to the proceeds will be adjudged precisely as though he had done so. If he had done so, the cattle would have come into the hands of the commission merchants as the property of Cooper and the proceeds of the sale thereof would have come, likewise, as the property of Cooper. The commission merchants have no interest in or claim on these funds that is adverse to either claimant. Flagstad's agreement that the cattle

should be shipped in the name of Cooper was, in legal effect, an agreement that the proceeds, likewise, should be in his name.   No innocent third party having acquired an intervening right, there is nothing to interfere with an adjustment of the mutual rights of Cooper and Flagstad in strict accord with their agreement.   We are clear, therefore, that the intervener is entitled to claim the proceeds of the 41 cattle.

III.   Did the commingling of the two lots of cattle and the consequent commingling of the proceeds of their sale operate to defeat the intervener's rights through the loss of identity of the particular proceeds to which it was entitled?   The proceeds of the sales in the hands of the garnishee were trust funds.   Theoretically, no trustee has a right to commingle trust funds either with each other or with his own funds.   As a practical fact, and in a physical sense, however, to keep different funds by a trustee physically separated, is quite impossible.   The separation is usually maintained as a matter of bookkeeping and accounting.

6. CHATTEL MORTGAGES: lien and priority: commingling mortgaged and non-mortgaged property: commingled proceeds: effect.

There was an early day when the very coin of a trust fund was kept identifiable and separate from the coin of every other fund. In those days, to commingle the coin was to lose the identity of the fund; hence the old maxim, "Money mixed is money lost."   2 Story on Equity Jurisprudence, Section 1258; *Trecothick v. Austin,* 4 Mason (U. S.) 16; *School Trustees v. Kirwin,* 25 Ill. 73.   But such adage long ago lost its voice.   Present-day methods of business have quite discarded the bag and the stocking.   A large public interest requires that the circulating medium shall circulate.   The separate identity of a fund can be maintained for every practical purpose by proper bookkeeping, accounting, computing, pro-rating, and

7. TRUSTS: establishment and enforcement: following trust property or proceeds: identification.

applying legal presumption to that end. Where a trustee commingles a trust fund with his own funds, the trust is impressed upon all, to the extent of the trust fund. If the trustee draws out of the common mass, he is presumed to draw first his own funds, and not the trust fund. *Knatchbull v. Hallett,* 13 Ch. Div. 696. Likewise, if he commingle the trust funds of different beneficiaries, the trust will be impressed upon the whole, in proportion to the interest of each. If any amount be drawn out of the common mass by one beneficiary, he will be presumed to have drawn first his own funds, and not those of the other beneficiaries.

So, in this case, the fact that the funds of Cooper and those of La Salle were commingled, furnishes no insuperable difficulty. La Salle drew $1,000. He is presumed to have drawn his own out of the mass. His right to it is disputed by no one. He claims no more. This leaves the remaining funds to the intervener, without any conflicting claim thereto except that of the attaching creditor.

We hold, therefore, that the commingling of the funds impaired no rights of the intervener to the remaining funds which are not claimed by the other beneficiary. We reach the conclusion, therefore, that none of the grounds upon which the intervener's claim was assailed are tenable. It necessarily follows that, as to the attaching creditor, the garnishee should have been discharged, and that the fund in question should have been awarded to the intervener. The judgment below is accordingly—*Reversed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.