FIRST NATIONAL BANK OF ONIDA, Appellee, v. WILL RIGGLE, Appellee; FIRST STATE BANK OF HARROLD, Intervener, Appellant.

CHATTEL MORTGAGES: Lien and Priority—Priority as to Proceeds 1 of Sale. The right of an attaching plaintiff to the proceeds of mortgaged personal property is *junior* to the right of the mortgagee to such proceeds when the mortgaged property was sold under circumstances such that the mortgagor *never had any control over the proceeds of the sale*.

ATTACHMENT: Levy and Lien—Priorities in General. Principle re- 2 affirmed that an attaching plaintiff cannot acquire a right over the attached property superior to the right possessed by the defendant in attachment.

TRUSTS: Constructive Trusts—Commingled Proceeds of Chattel Mort- 3 gaged Property. The nonfraudulent commingling and sale of the property covered by two different chattel mortgages, held by different mortgagees, with consequent commingling of the proceeds, will not deprive the court of power to impress trusts upon the entire proceeds in proportion to the interest of each of the mortgagees.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

OCTOBER 24, 1922.

REHEARING .DENIED FEBRUARY 13, 1923.

ACTION in attachment, wherein plaintiff asked judgment against the principal defendant, on notes executed by him to plaintiff's predecessor. Under the attachment, Rice Bros. were garnisheed on the theory that the money in the hands of the garnishee was the property of Riggle, the principal defendant,

and that the garnishee was indebted to him. The funds in the hands of the garnishee are the proceeds of cattle shipped by the mortgagor, Riggle, from South Dakota to Rice Bros., commission merchants at Sioux City, Iowa. Appellant had a chattel mortgage on the cattle, or most of them, which was a first mortgage, and duly executed and recorded in South Dakota. The plaintiff also claims to have a mortgage on some of the cattle, executed about a month subsequent to appellant's mortgage. This mortgage was not relied upon by plaintiff in the original petition, but is set up in its answer to appellant's petition of intervention. As to this matter, appellant contends that plaintiff waived its mortgage lien, if it had any, by bringing the attachment suit; and further, that the rights of plaintiff as an attaching creditor are no different or greater than the rights of the mortgagor, Riggle. Whether plaintiff did so waive its lien is not very material in this case, since appellant does not seriously contend that it is entitled to the proceeds of the cattle upon which plaintiff claims to have had a mortgage. Appellee states, in argument, that it is not relying upon its mortgage. Appellee contends that appellant waived its mortgage lien, because, as it claims, appellant consented that the mortgagor might ship and sell the cattle, and waived its right to the proceeds. This is the main point in the case. Appellant denies that it so consented, and shows that the mortgagor, Riggle, never had possession or control of the funds in controversy, and seeks to impress a trust thereon in the hands of the garnishee. Other issues and propositions relied upon will be referred to in the opinion.

The contest is between the two banks. Judgment was rendered against the principal defendant for the amount of the note, and he has not appealed. As between the banks, the trial court held that plaintiff was entitled to the entire fund remaining in the hands of the garnishee, after deducting the expenses of the shipment, a small amount paid by Rice Bros. to Riggle, by direction of plaintiff, and the proceeds of a few of the cattle in the shipment which, in another action from which no appeal was taken, the court held belonged to persons other than the defendant. The intervener appeals.—*Reversed in part.*

*Burgess, Gill, Sammis & Boylan,* for appellant.

*E. E. Wagner* and *D. J. O'Keefe,* for appellees.

PRESTON, J.—The parties waived a jury, and the cause was tried to the court. There were 58 head of cattle in the shipment, but it appears that some of these belonged to Riggle's neighbors, and some did not belong to him; so that 8 head, and the proceeds thereof, were eliminated from this case by the decision in the other case. The trial court found that, after making all deductions, the garnishee had in its possession the sum of $2,205.37 belonging to defendant, Riggle, and directed that the garnishee pay to the sheriff the said sum, to be applied by him on plaintiff's judgment against Riggle for that amount, and in addition thereto, the amount of plaintiff's costs. After deducting the proceeds of the 8 cattle just referred to, there remained 50 head in the shipment, the proceeds of which are in issue in this case. Of these 50, some were steers, some cows, and some young cattle, heifers. Thirty-six of the steers and cows were branded with the " $\Omega$ " brand. This is called the hat brand, in the record. Fourteen of the cattle were branded with an "R" brand. Counsel disagree somewhat, in argument, as to whether there were 12 or 14 so branded; but there is very little, if any, dispute as to this, and we find that there were 14. Appellant's chattel mortgages described the cattle branded with the hat brand, while plaintiff's mortgage described the cattle with an "R" brand. Appellee contends that, conceding that appellant had a valid mortgage on the 36 cattle just referred to, still plaintiff was entitled to the proceeds of such cattle, as well as to the 14 not described in appellant's mortgage; while it is appellant's contention that the court should have held that appellant was entitled to the proceeds of the 36 cattle described in its mortgages. The cattle were shipped, received, and sold on October 29, 1920, and were shipped to Rice Bros., to be sold by them on the market in Sioux City, and they were so sold before the writ of attachment was issued. There was no levy on the cattle, and neither party is claiming the specific property, as against those who purchased the cattle from Rice Bros. The notice of garnishment was served on Rice Bros. November 2, 1920, and the proceeds held because of the garnishment. Plaintiff's mort-

1. CHATTEL MORTGAGES: lien and priority: priority as to proceeds of sale.

gage is dated January 7, 1920, to secure a note of defendant's
for $2,100. Appellant's two chattel mortgages, one for $7,500,
upon which some payments had been made, and the other for
$5,000, are both dated December 15, 1919. One is referred to as
a second mortgage. They cover all the cattle shipped, except
the 14 branded "R." Defendant Riggle was in possession of the
cattle on his farm, described in the mortgage. As said, the
mortgages were duly recorded, and appellee does not question
that they would be valid everywhere. It is contended by appel-
lant that appellee had actual notice of appellant's mortgage, as
well as constructive notice, before the commencement of this
action. There is evidence, though disputed, tending to so show.
The appellee relies upon three propositions, to sustain the find-
ing of the trial court: First, that appellant waived any lien
it may have had, by the shipment and sale of the cattle by
Riggle, with the knowledge and consent of appellant; and that
the proceeds in the hands of Rice Bros. are subject to the at-
tachment. A number of cases are cited on this proposition,
which will be referred to later. Second, that all the cattle were
weighed and sold together; and that there was such a mingling
of funds that the court may not determine what amount of the
proceeds of the shipment represented cattle claimed by appel-
lant under its mortgages; and that, therefore, plaintiff is entitled
to the entire proceeds. Third, that, this being a law action, the
finding of the trial court on conflicting evidence is conclusive.

Referring briefly first to the last mentioned proposition,
there may be some conflict as to minor matters, but as to the
controlling facts, there is no substantial dispute. There is no
dispute whatever, and no claim by appellee, that the mortgagor,
Riggle, had the possession or control of the funds in controversy,
or that they were paid to plaintiff by him. The court made no
finding of fact as to some of the issues. We gather from the rec-
ord that the court found for plaintiff on the ground that appel-
lant had waived its lien. This being so, it was not necessary for
the court to pass upon some of the other questions, and we do
not understand that it did.

It is necessary to refer to some of the evidence briefly, as
to the alleged consent of appellant. First, we are satisfied from
the record that plaintiff gave its consent to Riggle to ship the

cattle, in so far as it applies to the 14 covered by plaintiff's mortgage. As stated, that may not be very important now. The cattle were shipped in the name of Riggle. The sales account of Rice Bros. is in Riggle's name. It appears that, when the cattle were shipped, and before they were sold, and before the attachment, Riggle told Rice Bros. that appellant had a $5,000 mortgage on the cattle, and he directed that the proceeds be sent to the appellant. Riggle testifies that, when he directed that the proceeds of the entire shipment be sent to appellant, he expected to get the money from appellant to pay plaintiff for the 14 head of cattle on which plaintiff had the mortgage—"just had the money sent to one place, and pay up when I got there." The sales account, after deducting the expenses and $200 paid to Riggle at the direction of plaintiff before the attachment, charges Riggle with a draft for the balance in the hands of Rice Bros. We take it that the attachment was served before the draft was sent. Officers of appellant bank testify that appellant did not give its consent to the shipment by Riggle, and that the first they knew of it was after the shipment had been made, when they wired Rice Bros. to send the proceeds to it. Appellant offered to turn over to plaintiff the proceeds of the 14 head, when appellant learned that plaintiff claimed that some of the cattle in the shipment were included in plaintiff's mortgage. We do not understand plaintiff to claim that there is any direct evidence that appellant gave such consent, or consented that Riggle should ship the cattle in his own name and receive the proceeds. But the contention is that such consent should be inferred from the circumstances, and because of similar prior transactions and the course of business between Riggle and appellant. In the prior transactions, the proceeds of sales were sent to appellant. At any rate, as we have said, there is no evidence that appellant consented that Riggle should receive or control the proceeds, or that he did so, or that he received the proceeds and paid them to plaintiff, as was the situation in some of the cited cases which plaintiff contends are analogous. There is no dispute about the fact that the funds are still intact in the hands of the commission merchants.

1. There are numerous cases holding that a mortgagee may consent to the sale of property upon which he has a chattel mort-

gage, and may so conduct himself as that the purchaser of the
property itself will take the title free from the
**2. Attachment:** mortgage lien; and that the mortgagee will be
**levy and lien:**
**priorities in**
**general.** held to have waived his lien and to be estopped
from asserting it as against such a purchaser. Such was the
situation in *Hall v. Getty*, 183 Iowa 436, cited by appellee. That
was an action wherein the mortgagee sought to foreclose his
mortgage lien, after having waived it. The court followed prior
cases cited at page 443, which cases are cited by appellee herein.
See, also, *Hess v. Dicks*, 192 Iowa 378, 384. Some of the cases
say that the waiver of the lien by the mortgagee is in the nature
of estoppel in favor of the purchaser. In *Livingston & Schaller
v. Stevens*, 122 Iowa 62, 69, a Massachusetts case is quoted as
holding that waiver differs from estoppel in this: that the pur-
chaser from the mortgagor need not know, when he makes his
purchase, that the mortgagee has given his consent to the sale.
In *Barrett v. Martzahn*, 186 Iowa 548, 551, it was held compe-
tent for a mortgagor and a mortgagee to agree to a transfer of
the mortgage lien from the property to the proceeds. We think
none of these cases apply to the situation presented in the in-
stant case. In this case, there is no controversy between the pur-
chasers of the cattle and the mortgagees; neither was there any
agreement shown or claimed that the lien should apply to the
proceeds, as in the *Barrett* case. It is further contended by
appellee that, under the circumstances of this case, the appel-
lant may not rely upon any trust relation, or claim that the funds
in controversy are held in trust by the commission men. Ap-
pellee cites *Smith v. Clark*, 100 Iowa 605, as being, in principle,
like *Smith v. Crawford County St. Bank*, 99 Iowa 282. It is
thought by appellee that *Smith v. Crawford County St. Bank*,
supra, and cases cited in the opinion are directly in point. In
that case, a mortgagor of cattle sold them, with the consent of
the mortgagee. They were shipped in the name of the mort-
gagor, who controlled the proceeds, and deposited the same to
his own credit in a bank, which was a second mortgagee, and
which applied the money to the payment of the debt to itself.
Under such circumstances, it was held that the bank, which
was the second mortgagee, and had received the money from the
mortgagor, did not hold the money in trust for the first mort-

gagee. If, in the instant case, the appellant had consented that the mortgagor, Riggle, should ship the cattle in Riggle's name, and they were so shipped, and Riggle received the proceeds and paid them to the plaintiff herein, the analogy would be complete. Such is not the situation. Under no phase of the testimony can it be claimed that appellant consented that Riggle should ship the cattle in his own name, and control the proceeds. If it be conceded that, by inference, appellant consented that Riggle might ship the cattle, there is no evidence of any agreement that he might ship them in his own name, nor is there any evidence at all that appellant agreed that Riggle should receive and control the proceeds of the sale. The most that could be claimed is that Riggle shipped the cattle, and that he notified the commission men of the mortgage, and directed them to send the proceeds to the appellant. He did not have possession of a dollar of the money, except $200 which the plaintiff consented to, and of which plaintiff does not complain. Doubtless, the money would have been sent to appellant, as the mortgagor directed, but for plaintiff's attachment. Had the commission company sent the money to appellant, Riggle, the debtor, could not complain, nor could plaintiff, as to the cattle covered by appellant's mortgages. Plaintiff might, perhaps, as to the 14 cattle covered by its mortgage; but appellant has been willing, and is now, that plaintiff should receive the proceeds of the 14. It is true that, in the *Smith* case, the court, in discussing the facts of that particular case, said that, to establish the trust relation, plaintiff must prove that the cattle were to be shipped and sold in his name. By permitting the mortgagor to ship in his own name, or by plaintiff's consent thereto, plaintiff put the mortgagor in a position whereby the mortgagor could and did secure possession of the proceeds. That is the more vital point. In *Hamm Brew. Co. v. Flagstad,* 182 Iowa 826, 834, it was said that the agreement that the cattle should be shipped in the name of the mortgagee was, in legal effect, an agreement that the proceeds, likewise, should be in his name. In the instant case, had it been shown that there was an agreement between appellant and Riggle that they should be shipped in Riggle's name, this would doubtless, without more, have authorized Riggle to collect the proceeds. Such was not the agreement, and what was done nega-

tives the idea that Riggle was to receive the proceeds. Had there been such an arrangement in the instant case,—that Riggle, the mortgagor, should ship in his own name, and secure the proceeds, to do with as he pleased,—we would have an entirely different proposition. As said, the fund is still intact, and is in the hands of the commission firm. Under the circumstances of this case, we are unable to see how plaintiff, by the attachment, secured any advantage or priority over appellant in the proceeds of the hat brand cattle, or that it stands in any better position than defendant, Riggle. Suppose, under the circumstances shown in this case, the contest was between Riggle and the appellant, as to the funds in the hands of Rice Bros. Could it be claimed for a moment that Riggle could defeat appellant's right to the fund? We think it quite clear that he could not. It may be observed, in passing, that plaintiff garnisheed this money, as belonging to the mortgagor, Riggle, and the trial court found that it was Riggle's money, and directed that it be paid on plaintiff's judgment against Riggle. The rights of plaintiff, as an attaching and garnishing creditor, rise no higher than the rights of Riggle. Whatever the rights of appellant herein are, as against Riggle, it may maintain them as against the attachment and as against the garnishment, regardless of any question of notice, actual or constructive, to the attaching or garnishing creditor. The commission men, Rice Bros., have no interest in or claim on these funds that is adverse to either plaintiff or appellant. *Hamm Brew. Co. v. Flagstad,* supra. In that case, as here, the plaintiff was the attaching and garnishing creditor of the defendant mortgagor. Supposed debtors of the mortgagor were garnisheed. The bank intervened in the garnishment proceedings, claiming the funds in the hands of the garnishee under a chattel mortgage on the property, which had been sold, and was represented by the funds in the hands of the garnishee, and asking that the court would impress a trust upon said proceeds in its favor. The bank claimed that the garnishing creditor had no greater right to the proceeds than did the mortgagor; and that the fact that the proceedings were at law did not prevent the application of equitable principles, which were enforcible in the garnishment proceedings. We think the case is directly in point, and rules the present case, and that, under that holding,

appellant is entitled, as against the plaintiff, to the proceeds of the 36 head of cattle branded with the hat brand, as claimed by it. See, also, on these propositions, *Thomas v. Hillhouse,* 17 Iowa 67; *Shaver W. & C. Co. v. Halsted,* 78 Iowa 730; *Barnes v. Thuet Bros.,* 116 Iowa 359; *Hoyt v. Clemans,* 167 Iowa 330. In the *Hoyt* case, at page 333, it is said that the lienholders consented to the sale, but that it was agreed that the proceeds should be received by the person agreed upon as the clerk of the sale, and that he should hold and apply the same upon the indebtedness secured by the chattel mortgage, and upon the landlord's lien. The facts are not, of course, precisely like the facts in the instant case. We shall not stop to further discuss the cases or the facts therein. The principles announced sustain our conclusion.

2. As to appellee's contention that, since the cattle were sold together, or rather, since the different kinds of cattle were not kept separate, and because of the mingling of the funds, it

3. TRUSTS: constructive trusts: commingled proceeds of chattel mortgaged property. is entitled to all the proceeds: that is, that it is impossible to determine what of the total proceeds are proceeds from the hat brand and the "R" brand cattle. It would be difficult, from the record to determine to a cent just what part of the proceeds should go to plaintiff and what part to appellant, but a very close approximation may be made. The entire shipment, consisting of 58 head, was shipped in two cars. Seven of the cattle were sold separately, and are accounted for in a separate sales account. The other sales account covers the 51. The sales accounts do not show the brand of any of the cattle sold. They are designated as S, C, and H. This we understand from the record to mean steers, cows, and young cows, or heifers,—50 of them. Some of the employees of Rice Bros. state that they handled different blocks of the cattle, and that some of them were branded; and they state the number, weight, and price of those branded "R," which would be the cattle covered by plaintiff's mortgage. Defendant, Riggle, testifies to substantially the same effect, and further, that the "R" brand cattle would all average about the same size; that, in this shipment of cattle, 14 head were branded with the "R" brand, and were covered by plaintiff's mortgage; that the rest branded "R" strayed away,

or were stolen during the summer. The different classes of cattle were not sold all together, nor to the same purchaser. Two lots of 8 steers were sold to one purchaser. Twenty-five cows were sold to two different purchasers in four separate lots. Two lots of 13 and 4 heifers were sold to Swift & Company, and 15 cows to Swift. It is reasonably certain from the evidence that 14 of the 15 cows sold to Swift for $1,113 are the 14 "R" brand cattle covered by plaintiff's mortgage. We arrive at this conclusion, not alone from the sales account, but from the testimony of the different witnesses. These 15 sold for $1,113, an average for the 15 of $74.20. The freight and other expenses on 51 head are given in the account as $253.89,—approximately $5.00 per head; so that the 14 of the cattle which we have said are covered by plaintiff's mortgage would net, under this way of figuring it, $69.20 each,—a total of $968.80. Figuring it another way, witnesses who saw and weighed the cattle state that the 14 head of the "R" brand cattle would weigh from 900 to 975 pounds each. This block sold at $7.50 per hundred. This would make the proceeds from each of the 14 in the neighborhood of $73 or $74,—substantially the same as figuring it the other way. We think appellant is entitled to the difference between $968.80 and $2,205.37, the amount now in the hands of the garnishee. This difference is $1,236.57. The trial court should have so found, and should have directed that the money in the hands of the garnishee should be so paid and applied. While, as said, plaintiff seems not to claim the 14 head, under its mortgage, appellant concedes that plaintiff is entitled to the proceeds of the 14 head, because it is claiming only the 36 head, under its mortgages. We are not so sure but that the $200 paid Riggle by the direction of appellee should be deducted from appellee's share. There might be a question whether plaintiff could bind appellant, or appellant's share of the property or proceeds, by directing the commission men to pay Riggle $200 out of appellant's property. But we are not inclined to do this, since appellant does not figure it this way, and states in argument, in effect, that they are entitled to their proportionate share of the amount of money now in the hands of the garnishee, after the $200 and the payment in the other case have been deducted, which leaves an amount of $2,205.37. We have figured it in still other ways

than as above set out, but the figures come out at the end substantially the same.  To set out such figures would necessitate going into the details of the evidence as to each animal, or each class of animals, from the time they were gathered together in Dakota for shipment until they were sold.  We do not feel warranted in discussing the evidence further.  Our figures do not correspond exactly with the figures of either party.  For instance, appellant, in one place, states that the amount in the hands of the garnishee is $2,205.37.  In another place, it states the amount as $2,161.02.  It is possible that the difference, $44.35, may be the costs, the amount of which we do not find given in the abstract.  We have stated the record as it is: that the sheriff, by the trial court's judgment, is to apply the first named amount, and in addition thereto, the amount of plaintiff's costs is to be taxed, etc.

It should have been said that no one was responsible for the method in which the sales were made, and the failure to note the different brands.  Doubtless it was simply the method of Rice Bros. in doing business.  There appears to be no fraud on the part of anyone in mingling the cattle or proceeds for the purpose of preventing identification or separation.  At any rate, appellant is not chargeable with the method adopted, nor do we think appellee is.  There is no evidence that appellant directed or authorized Riggle or Rice Bros. to mingle the proceeds.

Appellee cites no authorities on the question of the mingling of the cattle and proceeds.  Appellant contends that such mingling does not defeat intervener's rights, nor impair its right to the proceeds from the sale of the cattle, on which it held valid prior mortgages; and that, though the court cannot determine to the dollar the exact amount of the proceeds belonging to the intervener, the trust will be impressed on the whole, in proportion to the interest of each of the mortgagees (citing *Hamm Brew. Co. v. Flagstad,* supra, and *In re Assignment of Thompson,* 164 Iowa 20).  Without further discussion of either the facts or the law, we think that appellant's contention must be sustained.

Appellant argues, and cites a number of authorities on the proposition, that its chattel mortgages, being valid in Dakota,

are valid everywhere; and other questions. We have discussed the propositions which are controlling. The judgment is reversed in part, and remanded, with directions to allow, of the proceeds in controversy, to plaintiff $968.80, and to appellant, $1,236.57. Since appellant is successful in this court as to substantially 12/22 of the amount of money in controversy, 12/22 of the costs here will be taxed to appellee.—*Reversed*.

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.