ARTHUR I. SCHWANZ, Appellant, v. FARMERS CO-OPERATIVE COMPANY OF LORIMOR et al., Appellees.

**PARTNERSHIP: Assets—Chattel Mortgage to Secure Partner's Debt.**
1  A chattel mortgage by a partner on his undivided chattel interest in the partnership, to secure his individual debt, becomes absolute, when it is made to appear that the partnership is free of debt.

**BANKRUPTCY: Discharge—Effect on Existing Liens.** The discharge
2  in bankruptcy of the mortgagor of exempt chattels does not discharge the *lien* of such mortgage.

**CHATTEL MORTGAGES: Enforcement After Contest in Bankruptcy.**
3  The holder of a chattel mortgage on exempt property who appears in bankruptcy proceedings against the mortgagor and unsuccessfully contests the asserted right of the mortgagor to have said property set off to him (the mortgagor) as exempt, is not thereby estopped to later, and after the mortgagor has been discharged, enforce the *lien* of said mortgagor.

**CHATTEL MORTGAGES: Transfer by Mortgagor—Liability of Pur-**
4  chaser—Enforcement of Trust.  When *pigs* are covered by a chattel mortgage, and a non-fraudulent purchaser, with knowledge of the mortgage, matures said pigs into *hogs*, the holder of the mortgage may enforce against the proceeds of a sale of the hogs a trust for the full value of the hogs, not exceeding, of course, the amount of the mortgage debt.

FAVILLE, J., dissents as to the extent to which the trust may be enforced.

Headnote 1: 30 Cyc. p. 458.   Headnote 2: 7 C. J. p. 411.   Headnote 3: 11 C. J. p. 698 (Anno.)   Headnote 4: 11 C. J. p. 501.

*Appeal from Union District Court.*—H. H. CARTER, Judge.

JULY 1, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Action in equity by the owner of chattel property to recover from the agent who conducted the sale and from the bank in which the proceeds were deposited, the proceeds of such sale. Intervention by the Lorimor State Bank, mortgagee, to impress a trust upon such proceeds, and for an order directing payment

thereof to it. Decree in favor of plaintiff as to a portion of the sum in controversy, and in favor of intervener as to the balance. Plaintiff appeals.—*Affirmed.*

*O. M. Slaymaker, R. E. Killmar, and Higbee & McEniry,* for appellant.

*George A. Johnston,* for Farmers Co-operative Company and intervener, appellees.

*L. J. Camp,* for First National Bank, appellee.

STEVENS, J.—On or about April 15, 1924, Herman and Cora B. Schwanz, his wife, executed and delivered to intervener Lorimor State Bank, Lorimor, Iowa, two promissory notes for $2,500 each, securing the payment thereof by a chattel mortgage upon certain live stock and all increase thereof. The property was owned by the mortgagors and appellant in partnership, and the mortgage purported to cover only the undivided interest of the former therein. On July 25th following, Herman Schwanz filed a voluntary petition in bankruptcy, attaching a schedule of the mortgaged property and setting out the mortgage. Thereafter, and in due time, the property in controversy was set aside by the court to the bankrupt as exempt. The mortgage, which, under the United States statute, gave a preference to the mortgagee, was invalid as to the non-exempt property. The exempt property thus set off to the bankrupt was purchased of him by appellant, who, on or about February 25, 1925, caused the same to be shipped to St. Joseph, Missouri, and there sold upon the market. Appellant is a member of the Farmers Co-operative Company of Lorimor, in the name of which the hogs were shipped, and to which the proceeds of the sale were sent, and in turn deposited in the defendant First National Bank of Lorimor. The net proceeds of the sale, as found by the court, were $1,698.93. This action was commenced by appellant against both the Farmers Co-operative Company and the First National Bank of Lorimor, to recover the above sum. The Lorimor State Bank, mortgagee, intervened, claiming a lien upon a portion of the hogs sold, and asking that a trust be impressed upon the proceeds of the sale of the property covered by the mortgage, in the sum of $1,050, and for an order directing the payment thereof to it. Issues were joined

on the petition of intervention, and, so far as necessary to the decision of the points covered by this appeal, will be referred to later. Appellant concedes that he had actual knowledge of intervener's mortgage prior to the purchase of the hogs.

I. The first proposition argued by appellant,—namely, that a partner cannot give a valid mortgage upon his interest in the chattel property of the copartnership to secure his individual

**1. Partnership: assets: chattel mortgage to secure partner's debt.** indebtedness,—is ruled by our prior decisions. The mortgage is not, *per se*, invalid, but is subject to all partnership liens and debts. *Fargo & Co. v. Ames*, 45 Iowa 491; *In re Assignment of Cutler & Horgen*, 204 Iowa 739. The partnership debts were all paid, and the lien of intervener's mortgage became absolute, upon the interest of the mortgagor in the partnership property. The particular property in question had been set aside to the mortgagor as exempt, prior to the purchase thereof

**2. Bankruptcy: discharge: effect on existing liens.** by appellant. The mortgage, having been executed within four months prior to the date on which the petition in voluntary bankruptcy was filed, was invalid, under Section 9644, U. S. Compiled Statutes, as to non-exempt property. This, intervener concedes, but contends that this in no wise affected the lien of the mortgage upon the exempt property. The decision of this question turns on the effect of the discharge of the mortgagor in bankruptcy. Exempt property constitutes no part of the bankrupt estate, and the jurisdiction of the bankruptcy court is limited to the ascertainment and setting off to the bankrupt of the exempt property. *Lockwood v. Exchange Bank*, 190 U. S. 294 (47 L. Ed. 1061); *Eckhardt v. Hess*, 200 Iowa 1308. By receiving his discharge in the bankruptcy court, the mortgagor was released from all further personal liability. But it seems to be well settled, both in the Federal and state courts, that such discharge does not release or in any way affect a lien arising out of contract upon exempt property. *In re Bailey*, 176 Fed. 990; *In re Hartsell & Son*, 140 Fed. 30; *Ingram v. Wilson*, 60 C. C. A. 618 (125 Fed. 913); *Lockwood v. Exchange Bank*, supra; *Johnson v. Turnholt*, 199 Iowa 1331; *Eckhardt v. Hess*, supra; *First Tr. & Sav. Bank v. Kleih*, 201 Iowa 1298.

Reliance is placed by appellant upon *Drees v. Armstrong*, 180 Iowa 29. The case is not in point. The plaintiff in that

action held unsecured notes against the defendant, which he filed in the bankruptcy court. The defendant was the owner of a homestead acquired subsequent to the creation of the debt, and it was, therefore, not exempt from execution on a judgment therefor. After the discharge of the defendant in bankruptcy, the plaintiff commenced an action on the notes, which, as stated, he had previously filed in the bankruptcy proceedings, aiding such action by an attachment levied on the homestead of the defendant. The defendant set up his discharge in bankruptcy as a defense. The court held that the claim of the plaintiff was extinguished by the discharge of the defendant in bankruptcy, and that the failure of plaintiff to secure an order suspending the entry of such discharge until he could litigate his claim in the state court was fatal to his right to thereafter proceed against the property. All of the cases cited by appellant in his brief,— to wit, *Drees v. Armstrong*, supra; *In re Brumbaugh*, 128 Fed. 971; *In re Downing Paper Co.*, 147 Fed. 858; *In re Wells*, 105 Fed. 762; *In re Tiffany*, 147 Fed. 314; *Roden Grocery Co. v. Bacon*, 66 C. C. A. 497 (133 Fed. 515) ; *In re Maher*, 169 Fed. 997; *In re Castleberry*, 143 Fed. 1021,—are of the same character, and to the same effect. In the case before us, the intervener is not seeking to assert a personal claim against the mortgagor, but only to enforce the lien of his mortgage upon exempt personal property. We have already pointed out that the lien of the mortgage was not affected by the mortgagor's discharge in bankruptcy.

II. Intervener appeared in the bankruptcy court, and filed objections to the discharge of the mortgagor and to the setting aside to him of the property in controversy as exempt. Other claims were asserted by intervener, and tried and disposed of in the bankruptcy proceedings. These proceedings and the acts and conduct of the intervener in connection therewith are all set up by appellant as estopping him from asserting the lien of his mortgage or seeking the impressment of a trust upon the proceeds of the mortgaged property. The point is without substantial merit. Intervener had a right to assert and litigate any proper claim in the bankruptcy court. The lien of the mortgage was in no way waived. It is true that the bankrupt was compelled to litigate his right to exemptions, which

3. CHATTEL MORT-
GAGES: enforce-
ment after con-
test in bank-
ruptcy.

was contested by intervener. The adjudication of this point, if such it may be called, by the bankruptcy court in no wise affected the lien of intervener's mortgage upon the exempt property, and it is difficult to conceive how an estoppel can be predicated upon the facts disclosed. Intervener has at all times insisted upon the lien of its mortgage, and the mere fact that it failed to defeat the claim of the bankrupt to exemptions or his right to discharge is not such an adjudication as will prevent it from demanding the enforcement of the lien.

III. The remaining proposition for discussion relates to the extent of recovery to which intervener is entitled. It is contended by appellant that the petition in intervention proceeds upon the theory that the purchase of the pigs by appellant from the mortgagor constituted a conversion thereof, and that, at most, intervener is entitled to recover their value at the time of such conversion; or, if the doctrine of conversion is not applicable, and appellee bank holds the proceeds of the sale of the property for the use and benefit of the mortgagee, that appellant is entitled to have the expense of feeding and marketing the hogs set off against such fund. Intervener is not seeking to recover the value of the property as for a conversion, but is asking the impressment of a trust upon the sale of the mortgaged property. The pigs purchased by appellant of the mortgagor were covered by the mortgage as increase, and were not, of course, specifically described therein. The pigs were mingled with others of similar size and breed, so that, at the time the same were sold on the market, it would have been difficult, if not impossible, for the mortgagee to have identified them, unless by the testimony of appellant. Appellant had actual knowledge of the mortgage, and the purchase of the pigs was necessarily subject to the lien thereof. The mortgagee was not bound to proceed immediately to foreclose its mortgage. The mortgaged property was preserved by appellant upon his premises, and did not lose its identity. The difficulty that would have confronted the mortgagee, had a foreclosure of the mortgage been attempted, would have been to pick out and segregate the particular property from the herd with which it was commingled. It was the right of the mortgagee to defer foreclosure of the mortgage until the maturity of the debt for which it was security, or until it de-

4. CHATTEL MORT-GAGES: transfer by mortgagor: liability of purchaser: enforcement of trust.

sired to take action under the mortgage. The lien continued so long as the property remained in existence. It would have been the duty of appellant, upon demand of the mortgagee, if made at any time prior to the final sale thereof, to turn over the property to the bank. If he refused to do so, the mortgagee might treat such refusal as conversion, and bring an action for the value of the property at the time demand was made; or it could prosecute an action for the replevin of the property, and recover the same, or its value at the time of such demand. Such has been the rule in this state for many years. *McDonald v. Norton*, 72 Iowa 652. Had the mortgagee brought detinue or replevin, it would have been entitled, under the foregoing decision, to recover the property or its value, and such recovery would not have been subject to diminution on account of expense incurred by appellant in feeding and caring for the property. Neither the lien nor the right of the mortgagee to at any time possess itself of the property under its mortgage, or to recover its value, if it could not be produced, was in any way affected by the sale thereof by the mortgagor or its purchase by appellant. The measure of recovery in favor of the mortgagee in this action is the same as it would have been if the action were detinue or replevin. The applicable principle must be the same.

Appellant does not question the right of intervener, if the lien of the mortgage was not discharged by the proceeding in bankruptcy, to have a trust impressed upon the proceeds in its favor. That such is the right of the mortgagee in this jurisdiction is well settled. *Cable v. Iowa St. Sav. Bank*, 197 Iowa 393; *First Nat. Bank v. Riggle*, 195 Iowa 189; *Hamm Brew. Co. v. Flagstad*, 182 Iowa 826; *Jones v. Home Sav. Bank*, 200 Iowa 1186. What has already been said sufficiently disposes of appellant's plea of adjudication of the issues involved herein in the bankruptcy proceedings. The adjudication had nothing to do with the lien of intervener's mortgage upon exempt property, or his right to pursue the same in the state court.

The decree of the court is affirmed.—*Affirmed*.

EVANS, C. J., and DE GRAFF, VERMILION, ALBERT, MORLING, and KINDIG, JJ., concur.

FAVILLE, J. (dissenting).—I cannot concur in the opinion

of the majority on the question of the measure of damages. The facts are simple. Herman Schwanz owned some hogs. He gave a chattel mortgage on them to the intervener. The mortgage was duly recorded. It covered increase, and the pigs in question are the increase. Appellant had constructive notice of the mortgage. He bought the pigs from the mortgagor, and immediately commingled them with others of his own, of like age, size, and breed. From that moment, they could not have been identified by the mortgagee, or anyone acting for him. Appellant expended money by feeding the pigs and enhancing their value. He changed the condition of the property. He "manufactured" the pigs into matured hogs. It was analogous to threshing grain that was in the stack at the time of conversion. There is no claim of fraud or bad faith or any willful act on the part of appellant.

Two questions are presented at this point: (1) What is the proper measure of damages, and (2) is appellant entitled, in any event, to allowance for the reasonable value of the feed and labor expended upon the property? It is important to note the character of intervener's action. He did not sue in replevin, nor in detinue. He brings, by intervention, an action to impress a trust upon the proceeds of the sale of the "finished product"— the hogs. Conceding that such an action will lie, as between the intervener and the appellant, it is, in effect, no more than an action for damages for conversion. The measure of damages is no different because intervener happens to be in equity, asking for a trust in funds that belong to appellant. He has made no attempt at foreclosure of his mortgage. He has waived every form of action except one for his *damages,* and he now seeks to impress a trust for those damages upon certain funds of appellant's. What is the measure of such damages? Of course, the general rule as to the measure of damages in case of conversion is well established. Are intervener's damages enhanced because the property has been confused with other property and its value increased by the acts of the appellant? The situation as to the measure of damages is exactly the same as if one had purchased logs upon which there was a chattel mortgage, and had caused a confusion of goods by mingling the logs with others of his own, destroying their identity, and then converted all the logs into lumber, and sold the lumber. Would

the mortgagee have a lien on the *proceeds of the sale* of the lumber at the *selling price* of the finished product? Suppose the lumber had been converted into furniture by the original purchaser, and then sold, would the mortgagee have a lien on the proceeds at the *selling price* of the furniture? Suppose the mortgage had covered grain which was sold to a mill, and mingled with other similar grain and ground into flour and sold by the miller, would the mortgagee be permitted to recover the *selling price* of the *flour,* instead of the value of the grain which was converted and commingled? Wool covered by a chattel mortgage is sold, commingled with other wool, and all converted into cloth, and then sold. Is the mortgagee entitled to recover in *money* the value of the wool which he lost, or the selling price of the cloth? How would it be if the buyer had made the cloth into garments, and sold the garments? Suppose appellant had re-sold the pigs, the day he bought them, what would be intervener's measure of damages? If we are to go to the extent of holding that a mortgagee may have a trust imposed upon the *proceeds* of the property with which goods upon which he had a chattel mortgage have been *confused and commingled* and their identity destroyed (which I submit is much further than any of the cited cases go), still the question of the measure of his recovery must be the damage he suffered by reason of the conversion of his property. The measure of that damage is the fair and reasonable value of the property *at the time and place of the, conversion.* It is not the *selling price* of a mass of transformed articles with which his property has been confused and commingled. The authorities cited by the majority do not touch the question of the measure of damages in such a case. *McDonald v. Norton,* 72 Iowa 652, is in no wise in point on this question. In that case, a chattel mortgagee sued in detinue for the value of a colt that had been purchased by the defendant, and it was charged that defendant had disposed of the property or concealed it. We held that plaintiff could not recover exemplary damages, and that "plaintiff was entitled to a judgment for the value of the property, and for actual damages for its wrongful detention." If the case touches the question of measure of damages, it fixes it *at the time of the conversion,* for it allows damages for the *wrongful detention* after that time.

The true rule in such cases is stated in *Forsyth v. Wells*, 41 Pa. St. 291, as follows:

"Where the defendant's conduct, measured by the standard of ordinary morality and care, which is the standard of the law, is not chargeable with fraud, violence, or willful negligence or wrong, the value of the property taken and converted is the measure of just compensation. If raw material has, after appropriation, and without such wrong, been changed by manufacture into a new species of property, as grain into whisky, grapes into wine, furs into hats, hides into leather, or trees into lumber, the law either refuses the action of trover for the new article, or limits the recovery to the value of the original article. [*Silsbury v. McCoon*], 6 Hill 425, and note; [*Hyde v. Cookson*], 21 Barbour 92; [*Swift v. Barnum*], 23 Conn. 523; [*Moody v. Whitney*], 38 Maine 174."

In *Weymouth v. Chicago & N. W. R. Co.*, 17 Wis. *550, it is said:

"In determining the question of recaption, the law must either allow the owner to retake the property, or it must hold that he has lost his right by the wrongful act of another. If retaken at all, it must be taken as it is found, though enhanced in value by the trespasser. It cannot be restored to its original condition. The law, therefore, being obliged to say either that the wrongdoer shall lose his labor, or the owner lose the right to take his property wherever he may find it, very properly decides in favor of the latter. But where the owner voluntarily waives the right to reclaim the property itself, and sues for the damages, the difficulty of separating the enhanced value from the original value no longer exists. It is then entirely practicable to give the owner the entire value that was taken from him, which certainly seems to be all that natural justice requires, without adding to it such value as the property may have afterwards acquired from the labor of the defendant. In the case of recaption, the law does not allow it because it is absolute justice that the original owner should have the additional value, but because the wrongdoer has by his own act created a state of facts where either he or the owner must lose something. There the law says the wrongdoer shall lose. But if the owner chooses to resort to another remedy, in applying which the law may give him full compensation for all that he has lost, without compel-

ling the wrongdoer to pay more, I see no reason why that should not be the rule. The value of the property at the moment of conversion, with such increase as it may have received from fluctuations of the market, or other causes independent of the acts of the defendant, should be the measure of damages."

The foregoing states the rule as applicable to this case, where there has been no attempt at recaption, and the goods have been confused and commingled, and the mortgagee seeks only to recover damages.

The nearest we have came to passing on the question now before us was in *Clement v. Duffy*, 54 Iowa 632, which was an action in replevin to recover wheat in the stack. Plaintiff took the wheat under his writ, and threshed it and sold it. The jury found that defendant owned the wheat. We expressly declined to pass on the question of the measure of damages if the action had been in conversion, but held that recovery was *on the bond*, which required plaintiff to return the property and *pay* all damages occasioned by the taking under the writ, which, of course, allowed recovery for the highest market price. But in that case we said:

"In our opinion *the expense of threshing and marketing the grain was properly deducted from the market price.*"

That is exactly the situation in this case. Appellant only asks that he be allowed for the feed and labor that he expended upon the pigs. If intervener is to recover for the conversion of his pigs, it is of his pigs *as* pigs. That is what appellant converted. Intervener makes no claim for "wrongful detention" of his pigs. Wherein could there be damages for the "wrongful detention" of a pig?

If intervener is to be allowed the *selling* price of the *hogs* (which was not shown to be the reasonable market value), then appellant is entitled to the value of his feed and labor expended upon the property. This is our former rule. I think intervener should be limited to a recovery of the fair and reasonable market value of the pigs at the time and place they were converted. In any event, if allowed the selling price of the hogs, appellant is entitled to the value of the feed and labor he expended. As bearing on the question, see *Sloan State Bank v. Stoddard & Son*, 178 Iowa 104.