## NORDBY v. CLOUGH *et al.*

**Chattel Mortgage:** APPLICATION OF PROCEEDS : CONDITIONAL ACCEPT-
ANCE OF ORDER. Defendants had a chattel mortgage on cattle which
had been sold, and the proceeds were in bank to the credit of the
mortgagor, but were held by the bank upon request of defend-
ants, and also upon request of the purchasers of the cattle, who
directed the bank to pay out the money in such manner as would
protect them against the mortgage. The mortgagor gave plaintiff
an order on defendants for a sum of money "for feeding twenty
head of steers * * * upon which you now have a chattel
mortgage, and charge the same to my account." Defendants
accepted the order " so far as we have money in our hands after
our claims or notes are satisfied in full out of the proceeds" of the
mortgaged cattle. S., another creditor of the mortgagor, com-
menced suit and garnished the bank, but the suit was dismissed
upon an understanding between him, the mortgagor and defend-
ants that his claim should be paid after defendants' mortgage.
The payment of the mortgage and the claim of S. left only enough
of the proceeds to pay a part of plaintiff's order, and in an action
by him against defendants on the acceptance, *held—*

(1) That the mortgage on the cattle did not give defendants a
lien upon the proceeds. (See *Waters v. Bank,* 65 Iowa. 234.)

(2) That, in view of the fact that the proceeds were not in
defendants' control, their acceptance of the order must be
regarded only as an agreement to apply the excess of the
fund, so far as they could legally control it, in payment of the
order. (See *County of Des Moines v. Hinkley,* 62 Iowa, 637.)

(3) That, as against S.'s attachment, the defendants could not
control the fund for the payment of their mortgage.

(4) That defendants' agreement that S. should be paid next
after satisfying the mortgage did not diminish the amount
that plaintiff would have been entitled to upon his order,
and did not make defendants liable to him for the unpaid
balance thereof.

*Appeal from Woodbury District Court.*—HON. GEORGE
W. WAKEFIELD, Judge.

FILED, FEBRUARY 7, 1890.

L. AND C. ANDREWS were the owners of five carloads
of cattle on which the defendant firm held a mortgage

to secure an indebtedness due from Andrews to it. The Andrews were also indebted to the plaintiff in the sum of $283.92 for feeding said cattle. In February, 1887, the cattle were shipped to Chicago, and sold to Hunter, Evans & Co., and the proceeds of the sale of one carload, $850.62, was by Hunter, Evans & Co. placed in the bank at Dunlap, Iowa, to the credit of Andrews. On the seventeenth day of February, the defendants sent a telegram to Hunter, Evans & Co. as follows:

"SLOAN, IOWA, 81 : 20 Pd., 2—17, 1887.

"*To Hunter, E. & Co.:* We hold mortgage on load Charles Andrews' cattle. You must not pay over any of the proceeds to them. If you have, stop payment. Answer at once.

"CLOUGH & COE."

On the eighteenth they sent to the bank at Dunlap the following telegram:

"SLOAN, IOWA, Feb. 18, 1887.

"*To Dunlap Bank:* You must not pay L. and Charles Andrews the remittance from Hunter, Evans & Co. until Andrews settles with us. We hold mortgage against the cattle. Answer.

"CLOUGH & COE."

The bank at Dunlap also received a communication from Hunter, Evans & Co., directing it to consult one Childs, and make such settlement of the matter as would protect them. On the first day of March, 1887, Andrews made to plaintiff the following order:

"*Messrs. Clough & Coe, Sloan, Iowa:*

"Please pay to M. H. Nordby or order the sum of two hundred and eighty-three and ninety-two-hundredths dollars ($283.92), being the amount of money due said M. H. Nordby for feeding twenty head of steers purchased by me from you, and upon which steers you now have a chattel mortgage, and charge the said $283.92 to my account.

"March 1, 1887, ONAWA, IOWA.

"L. ANDREWS."

On the back of the order is an acceptance as follows:

"SLOAN, March 2, 1887.

"We accept the within order so far as we have money in our hands after our claims or notes are satisfied in full out of the proceeds of the sale of five cars of cattle in our chattel mortgage against L. and Chas. Andrews.

"CLOUGH & COE."

After the money was in the bank at Dunlap, one Smith, who was also a creditor of Andrews for feeding the cattle, in the sum of $432.10, commenced suit against Andrews, and garnished the bank. This was before the defendants' mortgage was paid. Smith afterwards dismissed his suit, in pursuance of an understanding with Andrews and defendants that his claim should be paid after defendants' mortgage. The payments on defendants' mortgage, the claim of Smith and $155.30 on plaintiff's order exhausted the fund in the bank; and this suit is to recover on the defendants' acceptance of the order for the unpaid balance. The district court gave judgment for the defendants, and the plaintiff appeals.

*McMillan & Kindall*, for appellant.

*J. H. & C. M. Swan*, for appellees.

GRANGER, J.—The cause was tried to the court without the intervention of a jury, and there appears to be no dispute as to the facts. The acceptance on which plaintiff relies for his recovery is recognized by both parties as a conditional one, and we do not think it necessary to refer to authorities cited as to the effect of an unconditional acceptance. We think the acceptance should be construed by the court standing as near as may be in the situation of the parties when it was made, and so as to conform it to their understanding. The literal language of the acceptance would only require them to apply money in their "hands" after the payment of their claim. But such a construction would not meet the intent of the parties, even if such an

expression was held to mean in their immediate custody. In ascertaining the understanding of the parties, it is proper to consider the facts as to, and the situation of, the fund, as known to the parties at the time of acceptance; for the payment is to be made from a particular fund, and the acceptance is conditional. *County of Des Moines v. Hinkley*, 62 Iowa, 637. The source whence the fund came, and its location, was at the time known to the parties. We think the parties then understood, and that such is the legal import of the acceptance, that the defendants were to apply the excess of the fund in payment of the order in so far as they could legally direct or control it; that it was not the understanding that they assumed a personal obligation, unless such obligation should arise from their wrongful act. There was sufficient of the fund after the payment of defendants' mortgage to pay plaintiff, and the reason plaintiff was not paid was because it was used to pay Smith. There is testimony tending to show, and there appears to be no conflict (but, if there is, the fact must be regarded as established on appeal in a law case, if necessary to sustain the judgment below), that the suit of Smith against Andrews, in which the bank was garnished, was dismissed with the understanding that Smith should be paid from the fund next after defendants' mortgage. It is true plaintiff was not a party to this understanding; but let us inquire if he was prejudiced by this course, or, in other words, if the fund would have been available for the payment of his claim if the agreement to withdraw the suit had not been made. Plaintiff's only claim to the fund was by virtue of the acceptance on which he sues. Defendants had no legal control over the fund in the Dunlap Bank. Their mortgage lien on the cattle did not extend to the proceeds of the sale. *Waters v. Bank*, 65 Iowa, 234. As against an attaching creditor, they could not control the fund for the payment of their own mortgage. It must then be regarded as a fact in the case that Smith, by virtue of his attachment lien, stood as a preferred creditor, and, without the consent of defendants, could have

reduced the fund to the extent of his claim; and thus, after the payment of defendants' mortgage, there would have been no more for plaintiff than he has received. The mere fact, then, that defendants and Andrews agreed with Smith to withdraw his suit, and receive his money, did not prejudice the plaintiff. We are led to believe that appellant's contention is based largely on the belief that the defendant firm, by virtue of its chattel mortgage, had the right to control the funds in the bank, because, in argument, when speaking of the direction of defendant to the bank to remit what was due it and hold the balance till Smith and Nordby should settle the matter of feed between them, it is said : "This direction shows unmistakably that they were controlling this fund as they had a right to do, under their chattel mortgage, as against all persons except Andrews' equity in the fund." A reference to the case of *Waters v. Bank, supra*, will show that the defendant, by virtue of its chattel mortgage, did not have such right, but, on the contrary, until the lien of Smith attached, Andrews alone had the right of control. It must be that the court below found that Andrews had never transferred this right of control to the defendant; and from the record there seems to be no purpose to give defendant any greater right than it possessed by virtue of its mortgage. As to such right, there may have been a mistaken view; but that fact would not change the right of Smith to secure his claim, nor would it impose additional burdens on the defendant because of its conditional acceptance. The judgment appears to be right, and it is

AFFIRMED.