A. R. SMITH, Appellant, v. THE CRAWFORD COUNTY STATE BANK.

A bank held a second mortgage upon certain cattle. · At the instance of the mortgagor, it obtained the notes given to the holder of the first mortgage, with the understanding that payments made by the mortgagor should be indorsed upon said notes. The holder of the first mortgage consented to a sale of the mortgaged property by the mortgagor, and no arrangement was made that the sale should be made in the name of the mortgagee. First mortgagee and the mortgagor agreed that the proceeds of said sale should be sent to the bank, to be applied on the first mortgage. Said proceeds were deposited with this bank, to the credit of the mortgagor, and the bank applied a large part of them to the payment of its said second mortgage. The bank knew that the first mortgage was to be paid when the cattle were sold, but did not know that the money deposited with it was the proceeds of those cattle, nor that an agreement had been made that the money sent it should be applied in payment of said first mortgage. *Held:*

a. Said funds were impressed with no trust in favor of the holder of the first mortgage.

b. The facts stated did not give the bank notice that any agency existed between first mortgagor and the mortgagee, nor that an agreement to apply the proceeds of the sale had been made, and did not put it upon inquiry as to said matters.

c. The bank was free to apply the deposit made, to its second mortgage.

*Appeal from Crawford District Court.*—HON. G. W. PAINE, Judge.

SATURDAY, DECEMBER 15, 1894.

ACTION in equity, to establish a trust in favor of plaintiff, as to certain funds in defendant's hands, and for a judgment against defendant. Decree for defendant. Plaintiff appeals.— *Affirmed.*

*T. J. Garrison* and *Parker & Richardson* for appellant.

*J. P. Connor* and *C. C. Cole* for appellee.

KINNE, J.—I. The facts as disclosed by the pleadings and evidence are that in 1890 and 1891 one John Carvell, a cattle buyer, became indebted to plaintiff on three promissory notes in a principal sum of about eight thousand dollars, which notes were given in payment of cattle purchased by him of plaintiff. At the time this suit was commenced, and after adding interest and deducting payments made, there was still due plaintiff over six thousand dollars on said notes. In September, 1891, said Carvell executed two chattel mortgages to plaintiff to secure said notes, on two hundred and thirty-eight head of cattle, which he had purchased of plaintiff. On February 3, 1892, said Carvell executed to defendant a chattel mortgage on three hundred and nine head of cattle, which included the cattle described in plaintiff's mortgages. This mortgage to defendant was given to secure a note of eight thousand dollars due the bank for money advanced Carvell with which to feed cattle. The bank's mortgage was by its terms subject to the plaintiff's mortgage. Only five thousand dollars was in fact paid by the bank to Carvell on this eight thousand dollar mortgage. Plaintiff resides in the state of New York, but owns land in and raises cattle in this state. For several years prior to 1891 he had sold cattle to Carvell, who gave him notes for the purchase price, and sometimes secured them by a

chattel mortgage upon his cattle, including those pur-
chased of the plaintiff. Carvell would then feed
the cattle, and ship them at such times and in such
numbers as he chose, and to whom he pleased,
including cattle other than those purchased of plaint-
iff; and the proceeds of such shipments would be
remitted to a bank in Denison to Carvell's credit,
and from the proceeds of such sales Carvell would
pay plaintiff such amounts upon the notes as he
saw fit. For a year or two prior to the spring of
1892, plaintiff sent his notes to defendant bank, and
the payments were made as aforesaid. At Carvell's
request, made at about the time he executed the mort-
gage to the bank, its officers wrote to plaintiff for his
notes against Carvell, so that payments made might be
credited thereon when the money should be received.
The notes were accordingly sent to defendant. In Feb-
ruary, 1892, Carvell shipped the cattle, in his own
name, to a commission house in Chicago, and the pro-
ceeds were, by his direction, remitted to the defendant
bank, and were by the bank placed to Carvell's credit
upon its books. The proceeds amounted to eight
thousand five hundred and forty-four dollars and
nineteen cents. For the difference between the amount
received and the amount of Carvell's indebtedness to
the bank—some two thousand dollars—Carvell drew
a check in favor of plaintiff, and the same was applied
upon his notes due plaintiff. The balance of the pro-
ceeds of sales of the cattle were applied in payment of
Carvell's indebtedness to defendant. Thus far, it is
believed, the facts are not in controversy. Plaintiff
seeks by this action to have a trust declared in his
favor as against the fund received by the bank, and as a
reason therefor, avers that he had an arrangement with
Carvell that he should, as his agent, and in his name,
sell the cattle in Chicago, and that the proceeds of such
sale should be paid to him, and that said sum should be

placed in defendant bank to plaintiff's credit, and applied upon his notes. He charges that defendant knew of this arrangement when it took its mortgage, as well as when Carvell shipped the cattle; that. as a matter of fact, Carvell shipped the cattle in his own name, and placed the proceeds in defendant bank to his (Carvell's) credit, and that defendant, knowing that said money was to be applied in payment of plaintiff's notes, took and appropriated the same to his own use. Other allegations of the petition need not be noticed. Defendant denies substantially all of the allegations of the petition, except that Carvell sold the cattle, and placed the proceeds in the defendant bank to his credit. It alleges the execution of the mortgage to it by Carvell to secure his eight thousand dollar note; that he shipped the cattle, sold them, and placed the proceeds to his own credit in defendant bank; that with Carvell's consent it applied sufficient of the proceeds of such sale to the payment of his indebtedness to the bank. Carvell testifies that he never agreed to ship the cattle in plaintiff's name. The court dismissed plaintiff's bill, and rendered judgment against him for costs.

II. The record presents but two questions for our consideration. *First.* Do the facts disclosed by the testimony establish a trust in favor of plaintiff? *Second.* Has plaintiff shown that defendant had notice thereof? Primarily, the relation of debtor and creditor existed between plaintiff and Carvell. Does this record show that the situation of these parties, in that respect, was changed? What facts are established by the testimony which show such a change in the relation of these parties as that it can be said that Carvell became, as to the plaintiff, a trustee, as regards the disposition of this mortgaged property? Plaintiff's claim that a trust was established is based upon an alleged agreement with Carvell,

whereby the latter is said to have agreed to ship and sell the cattle in plaintiff's name, and to place the proceeds to plaintiff's credit. If those facts were established, and it appeared that defendant was a party thereto, or took the fund derived from such sale charged with notice of such trust character, there might be some ground for claiming that defendant should be held to hold the proceeds of sale as a trust fund in favor of plaintiff. We do not discuss the many authorities cited by appellant to show that such facts would establish a trust relation which would inure to plaintiff's benefit, for the reason that, conceding the rule of law to be as claimed, the facts established do not bring the case within the rule contended for. To establish the trust relation, as between himself and Carvell, plaintiff must prove that the cattle were to be shipped and sold in his name. This he has failed to do. True, he so testifies, but Carvell positively denies that any such agreement existed. We do not understand that there is any denial of Carvell's right to sell the cattle. The claim is that he was to ship and sell in plaintiff's name, and, as we have said, this claim is not sustained by the testimony. In making the sale, then, Carvell was not acting as agent for plaintiff, but dealing upon his own account. The funds, therefore, which were the proceeds of the sale, were Carvell's, in so far, at least, that his disposition of the same would bind plaintiff, he having assented to Carvell's making the sale. They were not in any manner impressed with a trust character. Plaintiff could not, by virtue of his mortgage alone, claim a lien upon the proceeds of sale of the property, when, as it appears, the sale was made with his authority and not in his name. *Waters v. Bank*, 65 Iowa, 234 (21 N. W. Rep. 582); *Nordby v. Clough*, 79 Iowa, 428 (44 N. W. Rep. 697.) In view of the fact, that the evidence does not establish the arrangement, as claimed

by plaintiff, that the cattle were to be shipped and sold in his name, the question as to the existence of a trust, must be determined without reference thereto, Plaintiff had, by virtue of his mortgage, no legal control over the fund in defendant's hands. Having, as we think, assented to a sale being made by Carvell, plaintiff, after the sale, had no lien upon the money derived therefrom. No lien was thereafter obtained by plaintiff upon this money. But plaintiff claims, that it was agreed between him and Carvell, that the proceeds of the sale of the cattle should be sent to the bank, to be applied upon the notes held by plaintiff against Carvell. This claim is not conceded by Carvell. But suppose, for argument's sake, that it be conceded, that such was, in fact, the arrangement. Carvell had the consent of plaintiff to sell the property. The lien of plaintiff, as we have seen, ceased when the sale was consummated, and the plaintiff then, in law, and so far as third parties are concerned, must look either to the purchaser of the cattle or to Carvell personally, in case he fails to apply the proceeds of sale as agreed. Carvell's failure to carry out such an agreement would not affect the rights of defendant in, and to such proceeds of sale, and especially so, when, as in this case, defendant has no notice of the alleged arrangement. *Bank v. West*, 46 Me. 15; Herman Chat. Mortg. pages 247, 254.

III. From what we have said it appears that when the proceeds of the sale of the cattle came to defendant bank they were not impressed with a trust character by reason of any arrangement between plaintiff and Carvell. The money was remitted by Carvell's order, to his own credit, or at least subject to his power of disposal, so far as defendant knew. Defendant and all of its officers deny any knowledge that the funds were of a trust character. It is claimed that, as defendant knew of

plaintiff's mortgage, of the previous course of dealings between the parties, of the fact that Carvell was about to sell the cattle, and that he requested defendant to send for plaintiff's notes, that all these matters were such as to have put defendant upon inquiry as to the transaction and its trust character. But we hold that the evidence fails to show that by the shipment and sale of the cattle any trust relation was created between plaintiff and Carvell; that, as plaintiff had ceased to have a lien upon the cattle, and had no lien upon their proceeds, defendant did not receive the fund charged with any trust. In this view we need not consider the question as to notice to defendant of the existence of a trust relation, though we may properly say that we are satisfied that, even if a trust relation existed between plaintiff and Carvell, as claimed, still it is not shown that defendant had notice of it, or of the facts from which it can be said, under the circumstances, that it should be held to have been put upon inquiry to ascertain the existence of such a relation. There is no reason for disturbing the decree of the district court.—AFFIRMED.

SUPPLEMENTAL OPINION ON RE-HEARING.

SATURDAY, OCTOBER 17, 1896.

GIVEN, J.—An opinion was filed in this case, December 15, 1894, affirming the judgment of the district court. A re-hearing was granted, that we might again consider the case in the light of certain contentions made by the appellant that were not specifically emphasized on the former submission, and not directly noticed in the opinion. Appellee insists that these contentions were not made on the former submission, and that, therefore, appellant

is not entitled to now make them. True, they were not are as specifically as now, but sufficiently so, we think, to entitle them to consideration.

On the former submission, appellant contended that the following facts were established by the evidence, and rested his right to recover thereon: "(1) That Carvell agreed to ship and sell the cattle in plaintiff's name; (2) that Carvell agreed to apply the proceeds in payment of plaintiff's mortgage; (3) that the defendant bank received the proceeds charged with notice of the trust character of the funds." We found that appellant had failed to establish an agreement that the cattle were to be sold in his name, and with this finding we are still content. Appellant now contends that there was an agreement between him and Carvell that the proceeds arising from the sale of the cattle should be applied to the payment of his mortgage; that this agreement created an agency between the parties, and rendered the proceeds a trust fund; and that the bank received the same charged with notice of their trust character. It is insisted that, if each of these propositions should be answered in the affirmative, the judgment of the district court must be reversed. A careful review of the evidence leads us to the conclusion that there was no material difference in the agreement under which these cattle were sold from that which had previously existed between these parties for several years as to the sale of other lots of cattle. We have no doubt but that it was expected by appellant and intended by Carvell, that the greater part of the proceeds should be applied upon Carvell's indebtedness to appellant; that Carvell should ship and sell the cattle through the commission house in Chicago, cause the proceeds to be returned to the defendant bank, and appellant to be notified, so that he might send his notes to the

defendant bank, to be credited with whatever Carvell should cause to be so applied. The proceeds were sent to the defendant bank, credited to Carvell, and two thousand dollars, for which Carvell gave his check, was credited upon the notes, and that amount transmitted to, and received by the plaintiff. Carvell was not only authorized to sell the cattle in his own name, but, so far as any agreement was made, the proceeds were left subject to his control. We said in the former opinion, that even if a trust relation was shown, between plaintiff and Carvell, it was not shown that defendant had notice of it, or of facts from which it could be said, under the circumstances, that it should be held to have been put upon inquiry to ascertain the existence of such a relation. We still think, that this is the proper conclusion to be drawn from the evidence. It is true, that defendant's officers knew of appellant's mortgage, that the mortgage to the bank was junior, and, as the cashier says, that plaintiff's mortgage was to be paid when the cattle were sold, but this notice falls far short of showing knowledge of the trust relation contended for. The cattle were sold by Carvell in his own name, and the proceeds were sent to the bank in his name, and to his credit. We see no reason why the bank should even have suspected that this fund was the property of the plaintiff. Appellant cites several cases holding, in effect, that the stipulation in the mortgage of chattels, or an agreement between a mortgagor and motgagee, that the mortgagor shall retain possession and sell the mortgaged property, and pay the amount to the mortgagee, is not *per se* fraudulent and void as against other creditors, but presents a fact to be considered in determining the validity of the mortgage. It does not seem to us that these cases are controlling upon the question under consideration. Counsel also cite *In re*

*Maxwell's Estate,* 83 Iowa, 590 (50 N. W. Rep. 56). In that case, the mortgagor having sold the mortgaged land, the mortgagee released her mortgage and consented that the amount due to her might be retained by her son, the mortgagor, to be invested by him in her name and for her benefit. The mortgagor died soon after, and the money in his hands was traced to the possession of the bank where the mortgagor had deposited it. This court said: "A mortgage released to permit a sale of the property free from its lien would not bind the money received in payment for the property." Applying this principle of the law, it is clear that appellant, having consented to the sale of the cattle, has no lien upon the proceeds by virtue of his mortgage, nor is such a claim made. It is further said in that case: "But the facts show something more in the form of an agreement between the parties, to the effect that the money was to be held and invested for the mother." There is no such agreement in this case. It was not even agreed, as we understand the evidence, that the proceeds of the sale of these cattle were to become the property of the appellant, or that in making the sale and controlling the proceeds, Carvell was to act in any other capacity than that in which he had previously acted. If it may be said that there was an agreement that the proceeds of the sale should be applied to the payment of plaintiff's mortgage, we do not think it was such an agreement as constituted Carvell the agent of the plaintiff for the sale of the cattle, nor the proceeds to be a trust fund for the benefit of the plaintiff; but, even if these two propositions were answered in the affirmative, we are still of the opinion that the defendant bank had no notice of such a trust relation, nor of facts that should be held to have put it upon inquiry.

Aided by the further arguments, we have considered the case with care, and are still of the opinion that the judgment of the district court should be AFFIRMED.