R. C. LANGAN et al., Appellants, v. FARMERS' STATE BANK OF VAIL, Appellee.

**LANDLORD AND TENANT:** Lien—Following Proceeds of Property. A landlord's lien does not follow the draft or other proceeds of a sale by the tenant of property used upon the leased premises; and a party who receives and applies such proceeds to the extinguishment of his own claim against the tenant may not be compelled to account to the landlord, when such proceeds were received and applied without knowledge that the money represented property upon which the landlord had a lien.

*Appeal from Crawford District Court.—*M. E. HUTCHISON, Judge.

APRIL 6, 1923.

SUIT in equity, to declare and enforce a trust in funds alleged to have been received by the defendant for the use and benefit of the plaintiffs. On trial to the court, the petition was dismissed, and plaintiffs appeal.—*Affirmed.*

*Wolfe, Wolfe & Claussen* and *Sims & Kuehnle,* for appellants.

*Conner & Powers,* for appellee.

WEAVER, J.—On August 22, 1919, plaintiffs, by contract in writing, leased a tract of 480 acres of land in Crawford County, Iowa, to Wayne Duffy, Albert Duffy, and Mary Duffy, for the stated term of two years from March 1, 1920, at the annual rental of $5,520, payable for the first year on January 1, 1921, and for the second year on January 1, 1922. This suit was begun March 22, 1921. The petition alleges that the first described note is wholly unpaid, except the sum of $2,275.50, indorsed thereon under date of February 7, 1921; that, at and prior to December 6, 1920, said promissory note was held by the defendant bank for collection, as the agent of the plaintiffs, said bank having full knowledge and notice that said note was given for rent of said leased land; that at said time the said tenants

occupying said land owned and kept on the leased premises 20 head of steers, 25 heifers, and 2 calves, all of said property being subject to plaintiffs' lien for said unpaid rent; that, on December 6, 1920, said tenants disposed of said live stock on the market in Chicago, and the net proceeds of such sale, amounting to $2,196.09, were remitted to the defendant bank, without the knowledge or consent of the plaintiffs, and were by said bank appropriated to its own use; and that, although due demand has been made therefor, defendant refuses to pay or account for the moneys so received. Plaintiffs therefore demand recovery against the bank for the amount so received by it, with accrued interest. The answer to the claim thus made is a general denial of all the allegations of the petition.

On the trial of the issues so joined, the plaintiffs produced and identified the lease made to the Duffys and the note described in the petition. One of the plaintiffs, R. C. Langan, at first testified that the note was sent to the bank on or before December 6, 1920, the date of the sale of the cattle, but on further inquiry, and the exhibit of his letter transmitting the paper to the bank, it was conceded that this did not occur until December 30, 1920. The plaintiffs are residents of Clinton, Iowa, and a portion of their dealings with the bank has been conducted by correspondence.

The only witnesses examined were the plaintiff R. C. Langan, Wayne Duffy, one of the tenants on the land, and Dieter, the bank's cashier. From Duffy's story it appears that, during the year prior to his becoming a tenant on plaintiffs' land, he borrowed money from the defendant bank, and with it bought the cattle in question, and later took them with him when he went into the occupancy of plaintiffs' land. On or about December 6, 1920, the witness shipped the cattle to the Chicago market, and at his direction the proceeds of the sale were remitted in a draft to the defendant bank. Then or very soon thereafter, his debt for money borrowed to make the purchase of the live stock being still unpaid, he directed the bank to apply the proceeds of the Chicago draft to its payment, and this was done. Later, the rent note having in the meantime been sent by plaintiffs to the bank for collection, the bank purchased from Duffy corn to the amount of $2,275.50, and said sum

was applied as a payment thereon, constituting the partial payment admitted by plaintiffs in their petition.

As will thus be seen, the rights of the parties to this suit turn upon the question whether the bank received the money from the draft representing the proceeds of the sale of the cattle under circumstances rendering it liable in equity to account therefor to the plaintiffs. That plaintiffs' claim for rent was a lien upon the cattle in the hands of Duffy or of subsequent purchasers from him is not to be denied, but the bank is not shown to have purchased the cattle or to have converted them to its use. The evidence is without contradiction that Duffy himself, acting through the usual agencies of the Chicago market, sold and disposed of the cattle to buyers whose identity is not revealed by the record. There is no evidence that the bank aided, assisted, or connived at such sale, or that, when the proceeds of the draft were applied upon Duffy's debt, the bank knew that the money represented a sale of property on which plaintiffs held a lien. In the absence of any showing that the bank, in receiving the money, knew that it represented the proceeds of Duffy's sale of property on which plaintiffs had a lien, it is not necessary for us to consider or decide whether such knowledge alone would charge the bank with the duty of accounting therefor to the plaintiffs. Indeed, the argument on the part of appellants at this point is not so much that the bank had actual knowledge or notice that the remittance from Chicago was in payment for cattle on which they had a lien as it is that, if the bank did *not* know such to be the fact, "it had the *means of knowledge,*" and is, therefore, chargeable as trustee of the fund for the plaintiffs' use. If that fact were material, it might well be found from the record that the bank, by some of its officers, did know that Duffy was a lessee of plaintiffs' land; but that it knew that Duffy had these cattle, or kept them on said leased land, or that the draft credited to Duffy was for cattle or other property to which the landlord's lien had attached, does not appear. There is no evidence to show that the bank or its officers colluded or conspired with Duffy to defeat the lien by a sale of the cattle and by applying the proceeds to the payment of Duffy's debt to the bank. If Duffy, being in debt to the bank, had appeared at its counter and, producing

$2,000 or more in cash or in the form of a bank draft, had paid this over to the bank, to be applied on his indebtedness, we think there is no rule of law or equity which would require the bank, before accepting the tender or applying the payment, to demand of their customer an explanation of the source from which he derived the funds. See *Miller v. Race,* 1 Burrows 452, as quoted by this court in *Smith v. Des Moines Nat. Bank,* 107 Iowa 620, 627, where it is said:

"It is absolutely necessary, for practical business transactions, that the payee of money, in due course of business, shall not be put upon inquiry, at his peril, as to the title of the payor."

The plaintiffs' landlord's lien did not attach to the money or draft received for the sale of the cattle, though, if it be found in the possession of Duffy or of another not receiving it in good faith, equity may impress it with a trust in plaintiffs' favor. The burden in this case is upon the plaintiffs, not only to trace the money into the hands of the bank, but to establish their claim that the bank received and holds in bad faith. In this there appears to be a distinct failure of proof. It is suggested in argument by counsel that, at the time the bank received and credited the money upon Duffy's debt, it was holding the rent note for collection on plaintiffs' account. If this were a fact, it might afford ground for suspicion of some collusion with Duffy in selling the cattle with intent to defeat the lien; but the record shows beyond dispute that such note was *not* sent to the bank until two or three weeks later. Our prior decisions cited by counsel in support of their position, *Burnett v. Gustafson,* 54 Iowa 86, *Smith v. Crawford County St. Bank,* 99 Iowa 282, 284, and *Smith v. Des Moines Nat. Bank,* 107 Iowa 620, are distinctly opposed to the theory of the law advanced by appellants. See, also, *Nordby v. Clough,* 79 Iowa 428; *Hartwig v. Iles,* 131 Iowa 501; *Casady & Co. v. German Sav. Bank,* 159 Iowa 149. The controlling doctrine, as indicated by these precedents, is too well and too firmly settled to justify further discussion or citation of authorities.

The decree appealed from is right, and it is—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.