HANOVER NATIONAL BANK, Appellant, v. FARMERS' & MERCHANTS' STATE BANK, et al, Respondents.

(227 N. W. 67.)

(File No. 6562. Opinion filed October 15, 1929.)

*Hitchcock & Sickel,* of Mitchell, for Appellant.
*Clark & Wyman,* of Yankton, for Respondents.

FULLER, C. On September 4, 1922, one Stein, a farmer living near Kimball, gave a note and chattel mortgage for $5,000 to one Schoenberger. On July 2, 1923, Stein gave a renewal note and mortgage for a similar sum to Schoenberger. On October 30, 1923, the same mortgagor gave to the same mortgagee a note for $7,500 and a chattel mortgage, in renewal of the mortgages previously given. The first mortgage described "one hundred and twenty shoats, average weight one hundred pounds"; the second covered "one hundred red spring shoats, weight fifty pounds and one hundred twenty red hogs, weight two hundred and twenty-five pounds"; and the third mortgage described "two hundred and twenty-five hogs and shoats, average weight about one hundred pounds, following the cattle in feed lots."

Between the dates of the execution of the second and third mortgages above mentioned, and on September 20, 1923, Stein gave a mortgage to secure the sum of $3,000 to Schoenberger which described "twelve brood sows, red color, weight about four hundred pounds each and one hundred twenty-five head of red shoats, average weight about one hundred pounds." Each of these mortgages describes the property as in the possession of the mortgagor at his farm and as being free from all incumbrance. The three mortgages first above mentioned were assigned to appellant, Hanover National Bank of New York, and the last-mentioned mortgage was assigned to the respondent Farmers' & Merchants' State Bank of Yankton.

About March 24, 1924, one Donahoe, who was an officer and agent of respondent bank, took from the mortgagor 77 or 78 head of hogs, had them trucked to town, sold 6 or 7 locally, and shipped the remaining number to market. The hogs taken are described in the record as common hogs, red hogs, and as including some brood sows. The proceeds of the animals thus sold, according to appellant's allegation, amounted to $1,182.37, which appellant demands of respondent by reason of its alleged wrongful conversion of the animals upon which appellant claims a lien. The animals were disposed of by respondent without proceedings in fore-

closure sale. Thus, if the hogs were covered by a mortgage given Schoenberger before September 20, 1923, when the mortgage was given which respondent acquired the seizure was wrongful; and if the animals were covered only by appellant's mortgage of October 30, 1923, and by respondent's mortgage of September 20, 1923, a disposition of the property without procedure in foreclosure sale, by respondent, would constitute a conversion, notwithstanding that respondent's mortgage may have been the first mortgage on these particular animals. La Crosse Boot & Shoe Mfg. Co. v. Mons Anderson Co., 13 S. D. 301, 83 N. W. 331.

■■ Tried below to the court without a jury, the case resulted in a finding to the effect that the evidence failed to establish the identity of the hogs taken by respondent as animals mortgaged by Stein to the appellant's assignor. From judgment accordingly entered and from order overruling motion for new trial, the Hanover National Bank appeals. The appeal herein is addressed to the jurisdiction of this court to reverse findings of the trial court which are against the clear preponderance of the evidence. It is to be observed that more than a year passed during the period in which the several mortgages were executed, and that the mortgaged animals are referred to in terms of somewhat general description. The evidence is here quite as definite to the fact that the mortgagor was buying and selling hogs and that some were dying, as the evidence is indefinite concerning the numbers and descriptions of the animals which might be thus accounted for. The mortgage descriptions did not include such additional statements as that there was an intention to mortgage all the hogs, or all the hogs of a certain kind, which the mortgagor owned, nor was reference made to identification marks. Under these circumstances, it is evident that the description in either mortgage does not on its face establish an identity of mortgaged chattels with those described in any other mortgage, nor an identity with the animals taken by respondent. In this case the only avenue of inquiry which the record suggests as available, and the only course pursued by either party to ascertain the identity of the animals described in either mortgage was through the testimony of the mortgagor, Stein. Among other things, he testified that when Donahoe, for respondent bank, undertook to seize the 77 head of hogs, Stein, in conversation with him, made reference to the mortgage held by appellant and told Donahoe, in effect, that the hogs were covered by that mortgage and

that they did not belong to respondent bank. If the foregoing were all there is to be found upon the subject in the record, it might be inferred that Stein's statement to Donahoe is substantial and direct evidence of the alleged fact that the hogs, which were taken, were actually covered by appellant's mortgage; and the following testimony of the witness would be given additional force:

"Question: Were those hogs (reference being made to the 77 head) described in the mortgage of July 2, 1923? Ans.: That mortgage of 7500 covered them.

"Question: They were the same ones that were in the mortgage of $5000.00 of July 2, 1923? Ans.: That is what I figured.

"Question: When you say the hogs described in the $7500 mortgage, you mean the one of October 30, 1923, marked Exhibit D? Ans.: Yes, them are the same hogs, the way I had it figured."

The witness referred to no circumstance from which it might appear that his statements above quoted were accurate. We have a situation where the mortgagor stated that the animals taken by one mortgagee were included in the description of animals set forth in the mortgage held by another party, with no substantial proof to show the reason for his conclusion as to the fact. On cross-examination the witness admitted that he could not tell which hogs were covered by one mortgage and which were covered by another.

The hogs were changing in weight. Hogs were being raised, fed, and sold. They were being bought and sold, and some hogs died of the cholera. Concerning these the mortgagor testified: "Somebody's hogs died and I wouldn't know whose." Throughout an extended examination the witness furnished no clue by which the trial court might ascertain the accuracy of his statement upon which appellant relies. Upon the other hand, he evinced a lack of recollection of important details, except the single fact that he always had as many hogs as he described in the mortgages when they were made; the inference being that the hogs covered by respondent's mortgage were not included in appellant's mortgage. In test of the credibility of the witness, the trial court may have considered that if the mortgagor could reliably say that these hogs were covered by one mortgage, he should be able to say whether they were covered by another. But on cross-examination the witness testified:

"Question: And you don't know and wouldn't want to testify

now that the hogs that Mr. Donahoe took were not included in the Farmers & Merchants Bank mortgage? Ans.: I didn't figure it that way.

"Question: It is not a question of what you figured. You owned them and you mortgaged them, and if you are not able to say, give us the best testimony you got on it. · If you don't know, say so. Ans.: The only way I can answer is to say I don't know. I can't answer that question alone."

The burden was upon appellant to establish its claim by a preponderance of the evidence; to establish that one of its mortgages covered the animals in dispute. The only proof was in the testimony of the mortgagor, and there was sufficient, as we see it, to justify the trial court in doubting the credibility or accuracy of his statements.

█ The case calls for an application of the rule that the determination of the credibility of a witness is within the exclusive province of the trial court, sitting without a jury.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.