UNITED STATES of America,
Plaintiff,

v.

Gerald LOKEN and Harold Belk, doing business as partners under the firm name and style of Loken's Watertown Sales Pavilion, Defendants.

UNITED STATES of America,
Plaintiff,

v.

SOUTH DAKOTA LIVESTOCK SALES, a Corporation, Defendant.

Civ. Nos. 67-7N, 67-8N.

United States District Court
D. South Dakota, N. D.

Oct. 28, 1968.

ceeds from sales, at their sales pavilions of some livestock out of a herd mortgaged by Wesley A. Griffin to the Farmers Home Administration. Both cases are on the theory that the defendants were agents of the mortgagor, converters too, as they transferred the proceeds to him and that the government on that basis and on rules of law to be applied in one case has a right to a judgment for $730.55 and in the other for $1,475.-52.

Specifically on the facts to sustain conversion, it is the government's position, not disputed, that the F.H.A. acquired the chattel mortgage liens when the loans were made, that the sales later were at the instance and pursuant to directions from the mortgagor, that the liens then had not been formally satisfied, that the consent to the sales, if it had existence, as to form did not meet prescribed F.H.A. regulations and that the pavilions as a matter of law under those circumstances became agents for the mortgagor. Other material facts, likewise not in dispute, are the respective mortgages being in the usual form with conferred rights upon breach of the conditions to possession in the mortgagee, coupled with a qualified ownership sufficient to maintain the actions for conversion.

 That remedy, under a setting as the government in these cases has it posed, is available to a mortgagee under the law of this state. See comments in First National Bank of Pipestone v. Siman et al., 65 S.D. 514, 275 N.W. 347 (1937) that:

> "In this state a breach of the conditions of the mortgage, coupled with and which gives the right to possession to the mortgagee, gives the mortgagee such a qualified ownership as will enable him to maintain an action for conversion."

> " * * * By the great weight of authority an agent who assists his principal in converting property of a third person to the use of the principal or master is personally liable to the true

Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., for the United States.

Goetz, Hirsch & Haar, Yankton, S. D., and C. T. Sanders, Kansas City, Mo., for defendants.

## MEMORANDUM DECISION

BECK, District Judge.

These cases with federal jurisdiction invoked under 28 U.S.C. § 1345 have been combined for purpose of trial, each being a suit by the government against the respective defendants to recover pro-

owner for the loss thereby inflicted. See many cases cited in annotation in 20 A.L.R., commencing on page 120.",

other authorities cited in that opinion: "Northern Finance Corporation v. Midwest Commercial Credit Co., 59 S.D. 282, 239 N.W. 242; Hanover National Bank v. Farmers' & Merchants' State Bank, 55 S.D. 598, 227 N.W. 67; First National Bank v. Baldridge, 37 S.D. 606, 159 N.W. 130; LaRue v. St. Anthony & Dakota Elevator Co., 17 S.D. 91, 95 N.W. 292; Smith v. Donahoe, 13 S.D. 334, 83 N.W. 264; La Crosse Boot & Shoe Mfg. Co. v. Mons Anderson Co., 13 S.D. 301, 83 N.W. 331. See, also, Forbush v. San Diego Fruit & Produce Co., 46 Idaho 231, 266 P. 659, and cases therein cited; 26 R.C.L. 1136 and cases cited. * * *," and the observations in United States v. Kramel, 234 F.2d 577 (8 Cir. 1956):

"This court has recently held that the State law governs in a situation like this, Sig Ellingson & Co. v. De Vries, 8 Cir., 199 F.2d 677 and Sig Ellingson & Co. v. Butenbach, 8 Cir., 199 F.2d 679, certiorari denied in both cases 344 U.S. 934, 73 S.Ct. 505, 97 L.Ed. 719; and such is the holding of other courts.",

and footnote cases at page 579: "John Clay & Co. Livestock Commission v. Clements, 5 Cir., 214 F.2d 803, 807; Walker v. Caviness, Tex.Civ.App., 256 S.W.2d 880, 882; Annotation, 2 A.L.R. 2d 1124. Citing Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; and Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735".

The defendants' challenge to the application of that formula is this: that the facts reveal exceptions in the form of consents to the sales from the county supervisor, which from the standpoint of legal effect under the law of this state operate as waivers of the relied on chattel mortgage liens and as acts depriving the mortgagee of any remedy, except for suits and judgments on the promissory notes.

Such exceptions, according to the defendants, are established under this record and are available as defenses in cases of this kind in this state on the authority of Minneapolis Threshing Machine Company v. Calhoun, 37 S.D. 542, 159 N.W. 127 (1916), where it is said:

"That the chattel mortgages involved were in all respects legal and binding upon the parties hereto is not questioned, and that the proceedings to dispose of the mortgaged property and pay the indebtedness secured by said mortgages was free from any fraud or concealment is admitted; but it is the contention of appellant that, when the mortgagees consented to a sale of the mortgaged property in the manner shown herein, they waived their lien thereon and accepted the mere personal promise of the mortgagor in lieu thereof, and left the fund derived from the sale subject to levy by the judgment creditors of the mortgagor. That the consent of a mortgagee to the sale of mortgage chattels amounts to a waiver of the lien thereon, so that such property will pass into the hands of a purchaser free from the lien of the mortgage, is unquestionably the law. And it is generally held that the consent of the mortgagee that the mortgagor may sell the mortgaged property, given upon the agreement of the mortgagor that he will apply the proceeds of such sale on the mortgage debt, amounts to a substitution of the personal promise of the mortgagor in lieu of the mortgaged security, and that the proceeds of such sale, while in the hands of the mortgagor, are subject to levy by the mortgagor's judgment creditors. White Mountain Bank v. West, 46 Me. 15; Maier v. Freeman, 112 Cal. 8, 44 P. 357, 53 Am. St.Rep. 151; Smith v. Crawford County State Bank, 99 Iowa 282, 61 N.W. 378, 68 N.W. 690; Smith v. Clark, 100 Iowa 605, 69 N.W. 1011; Carr v. Brawley, 34 Okl. 500, 125 P. 1131, 43 L.R.A.,N.S., 302; Loughlin v. Larson, 27 S.D. 376, 131 N.W. 304. * * *.

"The facts in this case are on all fours with the facts in Hoyt v. Clemans, 167 Iowa 330, 149 N.W. 442, L.R.A.1915C, 166, and the principles applied by the court in that case should govern in this. In that case the court say:

'It is elementary that, as a general rule, a garnishing creditor acquires no greater rights against the garnishee than the judgment debtor would have had against him, had he sought to recover from the garnishee, and it is manifest under the facts above stated, that the Clemanses could not have recovered anything from Roberts, save as for a breach of trust. What was done amounted to little, if anything, more than a foreclosure of the mortgage and landlord's lien by notice and sale, and in such case consent of all parties to the sale does not discharge the lien. But, if it does, the proceeds in either case are impressed with a trust by agreement of the parties. The trustee has at all times been in possession of the proceeds, and his claim thereto, under the trust reposed in him, is superior to a garnishment by a judgment creditor of the original owner of the property. No amount of argument can make this plainer. If authorities be needed, we cite the following as sufficient for the purposes of the case: Peregoy v. Wheeler, 88 Iowa 732, 55 N.W. 462; Jones v. Turck, 33 Iowa 246.' "

■ Such pronouncements will, even as dictums, have the force and effect of settled law, if they come from the Supreme Court of the state where they were made, in a case involving questions related to those then resolved, if persuasive and if since then there is no conflicting evidence to show modifications or any change. As for the general rule on this point, see 21 C.J.S. Courts § 190 a, at pages 313–314:

"An obiter dictum statement or expression, however, is not to be wholly disregarded. It is entitled to respectful consideration as expressing the view of the judge by whom it was uttered, and has a persuasive force, as being the expression of a man learned in the law, and may be followed if sufficiently persuasive. It has been held that a dictum should be afforded controlling weight if it is the only reported statement of the law applicable to the particular facts presented; and that a dictum of a court of last resort should be regarded as tantamount to a decision, and binding, in the absence of a contrary decision of that court."

the cases in the notes including the following from Meuer v. Chicago, M. & St. P. Ry. Co., 11 S.D. 94, 75 N.W. 823 (1898):

"Obiter dicta of the highest court of another state is some evidence of the law of such state, and in the absence of conflicting evidence warrants the finding that the law of that state is as stated."

and further on this point from the opinion in Meuer:

"Counsel for appellant further contend that much of the opinion in Annas v. Milwaukee & N. Railroad Co. [67 Wis. 46, 30 N.W. 282] is obiter dicta. But, conceding such to be the fact, the case would still be some evidence of the law of Wisconsin, and, in the absence of conflicting evidence, would warrant the jury in finding the law of that state to be as stated in the opinion. In Hackett v. Potter, 135 Mass. 349, the supreme court, in speaking of a decision in New Hampshire, says: 'It is argued that these statements are obiter dicta; but, without determining this, it is enough to say that the dicta of the supreme judicial court of New Hampshire, found in the reports of cases, are some evidence of what the law of this state is.' We do not deem it necessary to discuss the later decision of the Wisconsin court."

■ As for the material facts having bearing on the referred to rules in Minneapolis, the court finds the mort-

gagor, a farmer, over a period of years, customarily, with two exceptions not material, financing his operations with the government agency [1], in the process selling his encumbered livestock at the defendants' livestock pavilions, with consent from the county supervisor, not formal however, but as reflected by the sales data, defendants' Exhibits 5, 6, 7, 8, 9 and an "Affidavit of Understanding" [2], dated June 29, 1964, signed by the mortgagor, witnessed by the county supervisor and one more and the contents thereof as follows:

"I, WESLEY GRIFFIN, of 517 Second Street South East, Watertown, South Dakota, hereby certify that I have on hand the following property located on the Arthur Griffin farm, which I have pledged as security for my loan with the Farmers Home Administration: 18 Holstein Cows, 3 Guernsey Cows, 12 Holstein Calves, 4 Guernsey Calves, 3 Ewes and 2 Rams, Plus recent cattle increase since 5/13/64, ⅔ share of all crops growing on the Arthur Griffin farm described as E ½ of Section 7, and SW ¼ of Section 7, Township 115, Range 54, subject to current cash rent. Plus all equipment listed on mortgage signed by me dated September 19, 1963.

I further certify that any disposition by death, sale, or other means, I will Promptly report and if disposition be by sale will appy the proceeds on my Farmers Home Administration loan less only normal transportation, selling or veterinary expense which may be necessary, or use any proceeds as agreed to be released by the County Supervisor of the Farmers Home Administration.

I understand that any other disposition may be regarded as criminal default on my part and I am subject to appropriate recourse action by the United States Government acting through the Farmers Home Administration."

Also established under the record is a running arrangement between the county supervisor and the mortgagor for him, without technical formalities, to sell *normal farm income securities*—the livestock in these cases, as the court finds, being such security—and to apply the proceeds toward payments on the mortgage contracts, purchase of required replacements and orderly handling of usual farm expenses, whenever operations of that kind gave rise to a decision or conclusion on his part that sales of that type of security should be made.

Government regulations [3] sanction procedure of that kind. United States v. Hansen, 311 F.2d 477 (8 Cir. 1963) holds it sufficient as proof of consent for sale, its legal effect a waiver of the liens on the security as well as on the proceeds and the mortgagor without any remedy, except as hereinbefore indicated by *suits for personal judgments on the promissory notes.*

Accordingly, conclusions of law in each of the two cases are in order granting judgments for dismissals to be entered by

---

[1]. Government's Exhibits 1, 2, 3, 4 and 11.

[2]. Defendants' Exhibit 10.

[3]. 6 C.F.R. § 371.4 is as follows:
"(b) Normal farm income security consists of all security property not considered as basic security. This will include crops, livestock and livestock products covered by the lien, which are sold in the usual course of operating the farm business. Subject to the limitations contained in paragraph (c) of this section, County Supervisors are authorized to release normal farm income security in the following situations: '(1) When the security property has been sold for its fair market value provided the proceeds are used for one or more of the following purposes: * * * ' (ii) To pay, in active adjustment loan cases, farm and home expenses provided for in the Farm and Home Plan, including approved revisions thereof".
and § 371.5(b):
"County Supervisors are authorized to release normal farm income security when the property has been sold for not less than its fair market value and the proceeds are used in accordance with the requirements in this paragraph, * * *."

the clerk and costs to be taxed as provided for by law.

This Memorandum Decision, without more, is to be treated as the Court's findings of fact and conclusions of law.